Fred H. SORROUGH

v.

UNITED STATES.

No. 501-58.

United States Court of Claims.

Nov. 1, 1961.

**920**

John A. Kendrick, Washington, D. C., for plaintiff. Burton, Heffelfinger, McCarthy & Kendrick, Washington, D. C., were on the brief.

Charles M. Munnecke, Washington, D. C., with whom was William H. Orrick, Jr., Asst. Atty. Gen., for defendant.

PER CURIAM.

This case was referred pursuant to Rule 45, 28 U.S.C.A., to Mastin G. White, a trial commissioner of this court, with directions to make findings of fact and recommendations for conclusions of law. The commissioner has done so in a report filed September 14, 1960. Briefs were filed by both parties, exceptions to the commissioner's findings were taken by the plaintiff and the case was submitted to the court on oral argument by counsel. Since the court is in agreement with the findings and recommendations of the trial commissioner, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Plaintiff is therefore not entitled to recover and his petition will be dismissed.

It is so ordered.

### Opinion of the Commissioner

The plaintiff, an officer of the Air Force Reserve who had served continuously on active military duty for a number of years, was released from active duty by the Air Force on January 18, 1954, pursuant to a reduction-in-force program. The plaintiff contends that he should have been retired for physical disability; and he seeks in the present litigation to recover disability retirement pay from and after the date of his release from active duty.

The plaintiff relies upon Section 402 (a) of the Career Compensation Act of 1949 (63 Stat. 802, 816; 37 U.S.C. 1952 ed., § 272(a)) as providing a statutory basis for his claim. At the time when the plaintiff was released from active duty by the Air Force, this section provided in part as follows:

"Upon a determination by the Secretary concerned (1) that * * * a member of a Reserve component of the uniformed services entitled to receive basic pay who has been called or ordered to extended active duty for a period in excess of thirty days, is unfit to perform the duties of his office, rank, grade, or rating, by reason of physical disability incurred while entitled to receive basic pay; (2) that such disability is not due to the intentional misconduct or willful neglect of such member and that such disability was not incurred during a period of unauthorized absence of such member; (3) that such disability is 30 per centum or more in accordance with the standard schedule of rating disabilities in current use by the Veterans' Administration; (4) that such disability was the proximate result of the performance of active duty; and (5) that accepted medical principles indicate that such disability * * * is of a permanent nature, such member may be retired by the Secretary concerned and, upon retirement, shall be entitled to receive disability retirement pay * * *: *Provided further,* That any disability shown to have been incurred in line of duty during a period of active service in time of war or national emergency shall be considered to be the proxi-

mate result of the performance of active duty."[1]

The evidence shows—and the defendant does not make a contrary contention—that the plaintiff was suffering from cirrhosis of the liver at the time of his release from active duty by the Air Force, that the cirrhosis had developed during the plaintiff's active military service in time of war or national emergency [2] and not during a period of unauthorized absence, that this condition was disabling to the extent of 30 percent, and that such disability was of a permanent nature.

The question whether the plaintiff's cirrhosis of the liver rendered him unfit to perform the duties of his office, rank, grade, or rating was considered on November 18, 1953, by an Air Force physical evaluation board in connection with the plaintiff's prospective release from active duty. The physical evaluation board found that the plaintiff was unfit for further military duty. However, the plaintiff's case was then reviewed by the Air Force Physical Review Council, and the council overruled the physical evaluation board and determined that the plaintiff was physically fit to perform the duties of his office, rank, grade, or rating. It was pursuant to the latter determination that the plaintiff was released from active duty on January 18, 1954, as a result of the reduction-in-force program, instead of being retired for physical disability.

Some years later, the matter of the plaintiff's physical fitness to perform his military duties was considered by the Air Force Board for the Correction of Military Records pursuant to an application filed by the plaintiff asking that his record be corrected so as to show that he was retired for physical disability effective January 18, 1954.[3] The board denied the plaintiff's application for reasons which will be discussed later in the opinion, but the board made findings which, in effect, reversed the determination of the Air Force Physical Review Council and reinstated the determination of the physical evaluation board that the plaintiff was unfit to perform his military duties at the time of his release from active duty by the Air Force on January 18, 1954.

Therefore, the final administrative determination was to the effect that the plaintiff, at the time of his release from active military duty by the Air Force on January 18, 1954, was unfit to perform the duties of his office, rank, grade, or rating by reason of physical disability.

Under the statutory standard, there is left for determination in the present litigation the question whether the plaintiff's physical disability was due to his intentional misconduct or willful neglect, on the one hand, or was the proximate result of the performance of active duty, on the other hand. In this connection, consideration must be given to the proviso in the governing law to the effect that "any disability shown to have been incurred in line of duty during a period of active service in time of war or national emergency shall be considered to be the proximate result of the performance of active duty." Since it is plain from the evidence that the plaintiff's disability was incurred "during a period of active service in time of war or national emergency," the problem before the court in the present litigation boils down, in essence, to the single question of whether the plaintiff's disability was incurred in line of duty.

1. The current provision of law on this point is contained in 10 U.S.C. § 1201.

2. The World War II emergency began on September 8, 1939 (Proclamation 2352, 4 F.R. 3851) or, in any event, not later than May 27, 1941 (Proclamation 2487, 6 F.R. 2617), and continued until April 28, 1952 (Proclamation 2974, 17 F.R. 3813), 50 U.S.C.A.Appendix note preceding section 1. In the meantime, the Korean emergency began on December 16, 1950 (Proclamation 2914, 15 F.R. 9029), and was still in existence at the time when the plaintiff was released from active military duty.

3. The plaintiff's application for administrative relief was filed after the institution of his action in the Court of Claims.

922

■ During the period of time involved in this case, there was in effect a regulation of the Air Force (par. 2, AFR 35–67, 12 December 1951) which had the force and effect of law (Standard Oil Co. v. Johnson, 316 U.S. 481, 484, 62 S.Ct. 1168, 86 L.Ed. 1611 (1942); Siegel v. United States, Ct.Cl. No. 104–56, decided Jan. 20, 1960, p. 9 of slip copy) and which established the presumption that any disease contracted by a member of the Air Force while on active duty was incurred in line of duty *unless* there was substantial proof that the contracting of the disease came within one of several excepted categories, which were carefully specified in the regulation. The only excepted category that might possibly be regarded as applicable to the plaintiff's case was one to the effect that a disease "directly attributable" to "Wanton overindulgence in alcoholic liquors" would normally be held to have resulted from intentional misconduct and not in line of duty. The pertinent evidence will be reviewed in the light of this regulation.

Over a period of years during his active military service, the plaintiff was a regular, daily consumer of alcohol. His usual alcoholic beverage was whiskey, and it was his custom to have several drinks of whiskey each evening. The plaintiff's eating habits during the same period were erratic. He frequently failed to eat an evening meal because he had no appetite when drinking liquor.

After the plaintiff's daily consumption of alcohol in substantial quantities and his erratic eating habits had continued for several years, he experienced an episode of unconsciousness (i. e., a fainting spell) in the fall of 1951 while in France, and he was examined by a medical officer on November 2, 1951. The medical officer concluded that the plaintiff was suffering from cirrhosis of the liver, and he suggested that the plaintiff abstain from alcohol and follow a high-protein diet. However, no change was made by the plaintiff in his regular consumption of liquor or in his erratic eating habits

for a period of approximately 1 year after this incident.

On January 5, 1952, the plaintiff was admitted to a military hospital in Germany for medical observation under a preliminary diagnosis of "Possible D. T.'s." A needle biopsy of liver tissue was made during the plaintiff's hospitalization; and as a result of that examination, a diagnosis of "Portal Cirrhosis, early," was made. The plaintiff was discharged from the hospital on February 28, 1952.

While traveling aboard a ship from Europe to the United States in August 1952, the plaintiff was admitted to the ship's hospital because of a delirium tremens episode. Upon reaching the United States at the end of this voyage, the plaintiff was transferred to a military hospital at Camp Kilmer, New Jersey, and afterwards to the Walter Reed Army Hospital. At the latter hospital, the plaintiff was placed on a therapeutic regimen that consisted of a high-protein, high-calorie diet, plus brewer's yeast and multivitamin tablets. On this program, there was progressive improvement in the plaintiff's symptoms, physical signs, and liver-function tests.

The plaintiff's case was considered by a medical disposition board at the Walter Reed Army Hospital on October 23, 1952. The board made a diagnosis of cirrhosis of the liver, associated with chronic alcoholism. The board recommended that the plaintiff be given 6 months' temporary limited duty, and thereafter that he return to the hospital for reevaluation. The board's recommendation was approved, and the program suggested by the board was subsequently followed.

After his appearance before the medical disposition board at the Walter Reed Army Hospital in October 1952, the plaintiff discontinued the daily consumption of alcohol and began to follow improved dietary practices, in accordance with medical advice. This apparently stabilized the cirrhosis, but, as indicated in an earlier part of this opinion, the disease had already progressed to the

point that the plaintiff was unfit to perform his military duties.

The medical disposition board at the Walter Reed Army Hospital in October 1952, another medical disposition board at the Walter Reed Army Hospital that considered the plaintiff's case on May 21, 1953, and the Air Force physical evaluation board that considered the plaintiff's case on November 18, 1953, all found that the plaintiff's cirrhosis was incurred in line of duty. It was not necessary for the Air Force Physical Review Council to make a finding on this particular point, as the council found that the plaintiff was physically fit to perform the duties of his office, rank, grade, or rating.

When the plaintiff's case was considered by the Air Force Board for the Correction of Military Records, that board found:

> "* * * that applicant [plaintiff] used alcohol intemperately, that the use of alcohol caused him to neglect his food intake, and that the combination resulted in his disability."

The board then proceeded to hold:

> "* * * that his [plaintiff's] disability was incurred not in line of duty and that his release from active duty rather than disability retirement was not error or injustice."

The board's report was approved by the Secretary of the Air Force.

█ This was tantamount to a determination by the Air Force Board for the Correction of Military Records, with the approval of the Secretary of the Air Force, that the plaintiff's cirrhosis of the liver was "directly attributable" to "Wanton overindulgence in alcoholic liquors." If this administrative determination is supported by the evidence in the record, it must be accepted by the court. Carlin v. United States, 100 F.Supp. 451, 121 Ct.Cl. 643, 660 (1951); Uhley v. United States, 147 F.Supp. 497, 137 Ct.Cl. 275, 281 (1957); Towell v. United States, Ct.Cl. No. 162–59, decided June 8, 1960, p. 11 of slip copy.

█ The evidence in the record supports the administrative findings to the effect that the plaintiff's cirrhosis of the liver was caused by his failure to eat properly over a period of years during his active military service, and that his failure to eat properly was due to his daily consumption of alcohol in substantial quantities during the same period.[4] Hence, there is a rational basis for concluding that the plaintiff's cirrhosis was "directly attributable" to his consumption of alcohol. That the plaintiff's consumption of alcohol amounted to "overindulgence" can be deduced from the delirium tremens episodes and from the harmful effect that the steady drinking had on the plaintiff's eating habits and, ultimately, on his liver; and that the overindulgence was "wanton," in the dictionary sense of having been undisciplined, can be deduced from the plaintiff's action in continuing to take several drinks of liquor daily for a period of approximately a year after the initial diagnosis of cirrhosis of the liver was made and after he had been advised by a medical officer to abstain from alcohol and follow a high-protein diet because of the cirrhosis.

█ It is my opinion, therefore, that the evidence in the record supports the determination of the Air Force Board for the Correction of Military Records, as approved by the Secretary of the Air Force, that the plaintiff's cirrhosis of the liver was not incurred in line of duty because it was "directly attributable" to "Wanton overindulgence in alcoholic liquors" (i. e., it was due to his own intentional misconduct). Accordingly, the board's determination must be accepted as disposing of the present case.

As the plaintiff is not entitled to the judicial relief that he seeks, his petition should be dismissed.

4. The evidence does not indicate the existence of any alternative explanation for the development of the plaintiff's cirrhosis. If there were any other reasonable explanation, the plaintiff presumably would have offered testimony regarding it.