Elizabeth L. HALDANE, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 711–81 C.

United States Claims Court.

March 1, 1983.

Eric A. Seitz, Washington, D.C., for plaintiff.

Michael D. Morin, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant. Major Chris G. Wittmayer, Dept. of the Army, Washington, D.C., Office of the Judge Advocate General, of counsel.

## ORDER

NETTESHEIM, Judge.

Defendant's motion for summary judgment and the opposition of plaintiff have brought the matter before this court. Briefing was completed on September 8, 1982, and this case was assigned to this court by order entered January 25, 1983. The able arguments of both counsel in a hearing held on February 25, 1983, assisted substantially in refining the issue for decision.

The narrow issue considered is the extent to which the court can reshape the record before the Armed Forces Board for Correction of Military Records (the "Board"), which considered in 1981 plaintiff's request for reinstatement to active duty with full back pay pending a proper determination of her medical condition, fitness for duty, and eligibility for disability retirement pay. The Board rendered a decision, without a hearing, on November 25, 1981, against plaintiff.

## FACTS

On April 11, 1980, in connection with her enlistment in the Army, plaintiff submitted to an induction examination. Undisputed is her averment that the examination extended "for a period of several hours" and that she "was found to be in excellent health and physical condition." Thereafter, on

June 4, 1980, prior to her entry onto active duty, she was again examined and avers, "[I]n an examination that was much shorter than my enlistment physical, I was found to be in excellent health and qualified for active duty." This statement, too, is not controverted in the record.

On June 11, 1980, plaintiff complained of a possible sprained ankle incurred on June 8,[1] when she fell in a hole while marching, five days after she reported to Fort McClellan, Alabama, for active duty. The examining physician diagnosed a probable moderate sprained left ankle, without fracture, and recommended that plaintiff wear tennis shoes and limit her physical activity for a period of time. An X-ray reported the following day indicated no fracture. Plaintiff that same day reported to Noble Army Hospital, and the notation of that visit states that she complained of two sprained ankles and said that she passed out from pain. No swelling was present. On June 15 plaintiff returned to Noble reporting that she had twisted her ankle while marching to the PX and that her leg gave out. She stated that her leg felt numb, that she was in terrible pain, and that the other leg was starting to hurt her. X-rays of both legs proved negative, and plaintiff was provided with ace-wrap bandages.

The following day plaintiff again reported to the troop medical clinic. The record of this examination indicates that she requested a medical discharge. The examining physician noted that she displayed "poor motivation for training." Again, no swelling was noted. Limited physical activity was indicated. On June 18 the troop medical clinic treated plaintiff's ankle with the observation that the ankle was slightly swollen. Plaintiff underwent physical therapy on June 18 and was given heel pads for her shoes and boots.

Plaintiff's visit to the troop clinic on June 19 reveals that both ankles were swollen, and plaintiff again said that she passed out from pain. A diagnosis was made of tendonitis of the Achilles tendon, and application of local heat was recommended. Unna boots, which defendant describes as "lightweight flexible supports," were placed on her ankles on June 20 and were removed on June 23. Because of her continued complaints, plaintiff was referred to the orthopedic clinic.

Capt. B.A. Parsons, an orthopedic specialist, instituted an Entrance Physical Standards Board Proceeding ("EPSBP") upon his examination of plaintiff on June 24, 1980, and diagnosed plaintiff as suffering from "[d]eficient muscular development, congenital, lower extremities, bilaterally. EPTS [existed prior to service], not service aggravated." Dr. Parsons assigned plaintiff a permanent L–3 profile, which under applicable regulations permitted her to receive assignments commensurate with her diminished capability. He recommended that she be discharged for failure to meet medical procurement fitness standards.

Plaintiff formally requested separation on June 25, 1980, acknowledging that she could request retention to complete her four-year enlistment, but declining to do so. On July 8, 1980, plaintiff signed another form in which she concurred with the proceedings and requested that she be discharged.[2] Plaintiff's discharge followed on

---

1. The examining physician's notation states that this was the second such sprain to the ankle and that the first occurred prior to her induction. The Board decision also credits this representation, which, for purposes of resolving all doubts in plaintiff's favor on summary judgment, the court has discredited, because plaintiff was examined on June 4 and nothing in the Board record indicates that a sprained ankle or effects thereof were noted in the examination. Obviously, a sprained ankle having occurred in the remote past is irrelevant to the Board's determination.

2. Plaintiff did not check the entry stating "I disagree with these proceedings, because my condition did not exist prior to service . . . and request my case be returned to the medical approving authority for reconsideration." Plaintiff claims that she was fraudulently induced to concur in the proceedings and not to note her disagreement by checking the appropriate entry. The practical effect of this allegation, if it could be proved, is that plaintiff would have continued on active duty and thereafter, in the normal course, qualified for disability due to an injury incurred in and aggravated by her tour of duty.

July 14, 1980, 40 days after she was inducted into the Army.

Thereafter, on September 24, 1980, plaintiff obtained a Veterans Administration ("VA") rating, which was considered by the Board, indicating that the cause of the condition of her ankles and feet existed prior to her military service. Plaintiff then applied for correction of her military records on January 22, 1981. The attachments to her application consisted solely of her personal affidavit dated that date; a letter dated December 1, 1980, from her neurologist; Dr. Parsons' EPSBP; and her discharge record form.

Plaintiff's counsel wrote the Board on February 18, 1981, *inter alia,* that plaintiff is substantially disabled although the cause of this disabling condition—other than the fact that she sustained injuries in Alabama which were not treated—has not been medically diagnosed. The doctors have, however, ruled out any pre-existing condition that would be consistent with the Army doctors' purported findings and recommendations.

The only medical report submitted, that of the neurologist, did not diagnose any medical condition, but ruled out muscular dystrophy. Apparently, plaintiff had told the neurologist that the doctors examining her pursuant to the VA rating procedure advised her that she was in the "fourth stage of muscular dystrophy." The neurologist also reported, "Certainly, I could find no evidence of muscle weakness."

This is the sole medical evidence plaintiff presented the Board to rebut Dr. Parsons' diagnosis of congenital deficient muscular development of the lower extremities. The only other attack on the Parsons report was leveled by plaintiff, who said that he spent "less than ten minutes with ... [her] and thereupon concluded that ... [she] suffered from a deficient muscular development, congenital, which existed prior to ... [her] entry upon active duty in the Army." Plaintiff also claimed that various other doctors disagreed with this diagnosis, but

the Board was not provided with their views.

The Office of the Surgeon General preliminarily ruled against plaintiff on April 1, 1981, and plaintiff's counsel submitted a rebuttal letter dated May 19, 1981 (which is not in the record or appended to plaintiff's papers). The only indication of the contents thereof is that the Board's subsequent decision of November 25, 1981, indicates that counsel's letter[3] failed to introduce any new medical data. The Board determined, as follows: "The applicant has failed to submit sufficient relevant evidence to demonstrate the existence of probable material error or injustice to warrant a formal hearing." Plaintiff's application was denied, and her petition to the Court of Claims followed on December 11, 1981.

### DISCUSSION

The issue for decision develops as to whether the court should permit plaintiff to supplement her opposition with affidavits. The only affidavit on record is plaintiff's of January 22, 1981, which was submitted to the Board.

■ Constraining the court's review of the Board's determination are standards that recently were restated in *Parthemore v. United States,* 1 Cl.Ct. 199, 201–202 (Cl.Ct.1982) (WHITE, S.J.), citing *Finn v. United States,* 212 Ct.Cl. 353, 356, 548 F.2d 340, 342 (1977), and other cases, to the effect that the determination of the Board cannot be disturbed unless it is clearly arbitrary, capricious, not supported by substantial evidence, or contrary to applicable law and regulations. Indeed, the evidence advanced to upset the Board's decision must be "clear and convincing." 212 Ct.Cl. at 356, 548 F.2d at 342.

Before the Board, plaintiff chose not to present evidence of her current medical condition (counsel claimed that she had not been diagnosed as of early 1981); rather, the strategy was to demonstrate that Dr. Parsons' opinion did not provide substantial

---

**3.** The court accepts the representation of plaintiff's counsel that at some point prior to decision a physical examination by the Board's physicians was requested and denied.

evidence of a medical condition pre-existing plaintiff's entry into active service, because it was contradicted by the neurologist's report, as well as by the Army's own comprehensive physical examinations (on April 11 and June 4).

■ That evidence noted, *Finn* is instructive that the reviewing authority can determine to put more weight on a service examination in the face of contrary opinions submitted by an applicant's doctors. In *Finn* two contrary opinions by plaintiff's doctors were held insufficient by themselves to constitute clear and convincing evidence that the board decision failed to satisfy the required evidentiary standard. 212 Ct.Cl. at 357, 548 F.2d at 342. Here, we have a contrary opinion by plaintiff's neurologist insofar as he disclaims evidence of muscle weakness. He does not state, however, that plaintiff is suffering from any disease or injury whatsoever; in fact, he negates a diagnosis of the fourth stage of muscular dystrophy, if plaintiff was so advised that she suffered from that illness by the VA's doctors. The most the neurologist indicates is to reaffirm that plaintiff has a "problem . . . to do with her legs, which have bothered her ever since she entered the Army on 4 June 1980."

Plaintiff responds that the internal inconsistency between the Army's medical reports provides the requisite clear and convincing evidence called for by *Finn,* because nothing in the record refutes plaintiff's contentions that her induction examinations were longer and more thorough than the ten-minute examination performed by Dr. Parsons and that the earlier diagnosis of a sprained ankle is inconsistent with a diagnosis of congenital deficient muscular development.

Plaintiff's counsel claims that he could have provided the Board with an affidavit by another orthopod to discredit the ten-minute examination and to attest that certain tests should have been, but were not,

performed prior to the diagnosis leading to plaintiff's discharge. He also states that he could have provided the Board with an affidavit by an orthopod attesting to the specific nature and extent (if not diagnosis) of plaintiff's medical problems. Indisputably, neither of these affidavits was tendered to the Board. The opposition to summary judgment before this court rests on the same evidentiary showing made before the Board, *i.e.,* the internal inconsistency of the Army's own medical evaluations, the neurologist's report, and plaintiff's affidavit.

At oral argument, plaintiff's counsel made a proffer that he could supply an affidavit by an orthopod challenging the Parsons orthopedic report on the grounds that it was cursory and lacked the appropriate supporting tests, as well as an affidavit presenting the current diagnosis of plaintiff's medical condition, and perhaps even an affidavit by a physician as to her condition in June 1980.[4] Defendant resists this proffer as untimely, arguing that the briefing has closed and that plaintiff's burden was to establish in this court by clear and convincing evidence that the Board's decision was not supported by substantial evidence. Defendant also contends that such affidavits properly should have been presented to the Board, so that this court should not afford plaintiff an opportunity to undermine the Board's determination when plaintiff admittedly had no excuse for failing to present the Board with the same affidavit(s) during 1981 to dispute Dr. Parsons' report. Finally, defense counsel pointed to the fact that plaintiff presented no evidence of any disability—pre-existing or service-connected—that would support a disability retirement.

■ The court decides against foreclosing plaintiff an opportunity to overcome summary judgment because her counsel did not file affidavits during the briefing phase.

Defendant would prevail on the existing record if this case were in a posture of

---

4. Such testimony would be admissible under *Furlong v. United States,* 153 Ct.Cl. 557, 566 (1961), where the court permitted testimony at trial of plaintiff's condition 13 years earlier to show that the evidence before the board was so incredible that no one undertaking to arrive at a fair and impartial decision could have given it credence.

cross-motions for summary judgment, and three of the cases relied on by defendant stand precisely for that proposition. *Finn v. United States,* 212 Ct.Cl. 353, 548 F.2d 340; *Frye v. United States,* 210 Ct.Cl. 325 (1976); *Storey v. United States,* 209 Ct.Cl. 174, 531 F.2d 985 (1976).[5] Traditionally, however, the Court of Claims has not been hesitant to try cases when factual allegations are made challenging the lawfulness of a board's decision on disability. *E.g., Fiedler v. United States,* 221 Ct.Cl. 841, 843, 618 F.2d 123 (1979) (also involving an alleged pre-existing medical condition, not service aggravated); *Dayley v. United States,* 180 Ct.Cl. 1136, 1147 (1967); *Kingsley v. United States,* 172 Ct.Cl. 549, 557 (1965); *see O'Callaghan v. United States,* 578 F.2d 1390, 216 Ct.Cl. 481 (1978), *cert. denied,* 439 U.S. 1068, 99 S.Ct. 835, 59 L.Ed.2d 33 (1979) (dismissed on cross-motions based on laches, but trial called for absent laches).

Plaintiff has not yet shown that a genuine issue of material fact exists as to whether the Board determination was supported by substantial evidence, so, obviously, clear and convincing evidence has not been established that the Board acted arbitrarily or capriciously or that its decision is not supported by substantial evidence. However, plaintiff's proffer goes to her reasonable assertion that, after having found plaintiff fit for active duty in two physical examinations proximate to her induction, a ten-minute physical examination unsupported by tests or X-rays should not have been given the deference accorded by the Board.

Plaintiff will be allowed 30 days from the date of this order to file and serve affidavits. If upon receipt of any affidavits, defendant believes that they raise genuine factual issues and are of evidentiary quality, the court will entertain a motion to remand to the Board. If defendant chooses to rest on its papers and proceed by summary judgment, defense counsel shall notify this court's law clerk, and the court will enter its decision on the summary judgment

motion without further briefing, unless defense counsel elects to make another filing.

For the foregoing reasons, plaintiff is given leave to file affidavits by no later than March 31, 1981. Further consideration of defendant's motion for summary judgment is deferred at this time.

IT IS SO ORDERED.

---

**5.** Also cited by defendant is *Ward v. United States,* 178 Ct.Cl. 210, 216 (1967), wherein the Court of Claims applied the narrow standard of review urged by defendant, but after trial.