**Matthew H. SAWYER, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 229–88C.**

United States Claims Court.

Dec. 1, 1989.

Guy J. Ferrante, Falls Church, Va., for plaintiff.

James M. Kinsella, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. LCDR Brian D. Robertson, Office of the Judge Advocate Gen., of counsel.

## OPINION

NETTESHEIM, Judge.

The issue in this case before the court after argument on defendant's motion for summary judgment is whether a military correction board in a disability review proceeding can supply the correct standard for disallowing the claim after the disability board denied the claim reciting an admittedly incorrect standard.

## FACTS

Unless otherwise noted, the following facts are undisputed. Matthew H. Sawyer ("plaintiff") began his active duty service in the United States Navy on February 3,

1981. Plaintiff originally was assigned to the Naval facility at Coos Head, Oregon, following recruit training and studies at the Ocean Systems Technician "A" School. Plaintiff's Report of Enlisted Performance Evaluation for the period of July 25, 1981, through November 9, 1981, commended his reliability, ability to learn quickly, eagerness, outstanding military bearing, and unselfishness. In addition, plaintiff was recommended for advancement and retention and was considered to have great potential for a successful Naval career.

On October 4, 1981, while stationed at Coos Head, plaintiff sustained serious injuries in a motorcycle accident. Prior to the accident, plaintiff had entered the Balboa Bay Club at approximately 1:30 a.m. to celebrate his upcoming birthday. At the time plaintiff was on authorized liberty status between watches. Two servicemembers, OTSN (Seaman) Rebecca A. Raines and OT3 (Petty Officer) Robin F. Storey, observed plaintiff consume one alcoholic beverage.* Just before 2:00 a.m., plaintiff rose to leave the bar. Both servicemembers contend that he did not appear to be intoxicated at that time.

Several minutes later, Petty Officer Storey; Seaman Raines; and a companion, Robert Shibbles, departed the club and met plaintiff outside in the parking lot. Both Storey and Raines offered plaintiff a ride to Coos Head in their car because of adverse weather conditions, i.e., wet road surface and fog. Storey took plaintiff's helmet and gloves in an attempt to persuade him to ride with them back to the base. Plaintiff refused the invitation, retrieved his helmet and gloves, and departed the parking lot.

Raines, Storey, and Shibbles were approximately ½–¾ mile behind plaintiff. As they rounded a bend in the road, the trio discovered plaintiff lying face down on the cement about 10 feet in front of his motorcycle. Shibbles administered first aid while Raines drove off to telephone for help. There are no known witnesses, and plaintiff did not have any recollection of the accident.

Plaintiff was transported to a local emergency room for treatment. According to the injury report, a blood specimen drawn at 3:40 a.m. indicated a blood alcohol level of 0.23 percent. Plaintiff suffered numerous injuries, some of which were potentially disabling. The Navy thereby considered him for disability benefits.

According to the administrative record, Officer Pat Downing and Deputy Stacey of the Coos County Sheriff's Department investigated the accident. Officer Downing confirmed in his report that the road surface was wet and slippery and the weather foggy. He further determined that plaintiff was traveling in excess of the maximum safe speed for the road conditions, based on the length of the tire marks prior to impact. The report noted violation of a basic speed rule as the primary cause of the accident and wet pavement as the secondary cause.

Pursuant to the Manual of the Judge Advocate General, Navy officials conducted a separate investigation into the accident. This report concluded that the injuries suffered were incurred in the line of duty and not due to plaintiff's own misconduct.

Congress has established a comprehensive statutory scheme for determining a servicemember's entitlement to retirement or severance pay as a result of injuries sustained while on active duty. 10 U.S.C. §§ 1201–1221 (1982). A service member must qualify for a medical separation as "unfit to perform the duties of his office, grade, rank, or rating because of physical disability incurred while entitled to basic pay...." 10 U.S.C. § 1201. Congress empowered the Secretary of each branch of the armed services to prescribe the criteria for discharge without retirement or severance pay. 10 U.S.C. § 1207 provides:

> Each member of the armed forces who incurs a physical disability that, in the determination of the Secretary concerned, makes him unfit to perform the

---

* Both individuals, who were co-workers of plaintiff, had been in the bar since approximately 7:30 p.m.

duties of his office, grade, rank, or rating, and that resulted from his intentional misconduct or willful neglect or was incurred during a period of unauthorized absence, shall be separated from his armed force without entitlement to any benefits under this chapter.

Congress also granted each Secretary the authority to prescribe implementing regulations. 10 U.S.C. § 1216(a).

The Naval regulations contained in SECNAVINST 1850.4 (June 23, 1977), The Disability Evaluation Manual (the "Manual"), set forth two objectives of the disability evaluation: "the maintenance of a physically fit and combat ready Navy and Marine Corps, including Reserve components[; and] equitable consideration of the interests of the government and individual servicemembers." SECNAVINST 1850.4 § 0201a–b. According to the Manual, it is presumed that injury suffered by a member is not the result of his own misconduct; clear and convincing evidence is required to overcome this presumption. *Id.* § 0202a(3). The Manual further states that a member's injury is not in the line of duty if it is incurred as a result of the member's own misconduct, defined as intentional misconduct or willful neglect. *Id.* § 0202a(1)(a), b(1).

The definition of misconduct includes any injury incurred as the proximate result of prior and specific voluntary intoxication. A finding of misconduct due to voluntary intoxication may only be made, however, when:

(a) [I]t can be clearly shown that the member's physical or mental faculties were impaired;

(b) the extent of impairment can be clearly determined, and

(c) it is clear that such impairment was the proximate cause of injury.

*Id.* § 0202e(1).

The process of determining whether a member is entitled to retirement or severance pay routinely begins with a medical board, convened to report upon the present state of health of an individual servicemember. The medical board is required to refer cases to the Central Physical Evaluation Board (the "CPEB") in Arlington, Virginia, whenever a member's fitness for continued active duty is questionable. The CPEB functions as the initial level of the Navy's physical disability evaluation. Decisions of the CPEB are based on review of medical board reports, the Naval investigation, and the member's service and health records.

On February 9, 1982, a medical board determined plaintiff to be medically unfit for military service, despite assertions to the contrary, as a result of cerebral and craniofacial trauma with cerebral spinal fluid fistula and secondary meningitis, encephalopathy, impairment of higher cortical functions, diabetes insipidus, fractures of the right tibia and fibula, and mild secondary hypogonadism. During the proceedings plaintiff indicated his desire not to continue on active duty. The medical board further recommended that plaintiff's case be presented to a physical evaluation board.

On March 18, 1982, the CPEB submitted recommended findings that plaintiff's disability was due to intentional misconduct or willful neglect and that, therefore, he was ineligible for benefits. In addition, the findings stated that plaintiff was unfit for duty because of physical disability. Having been advised of the recommended findings of the CPEB, plaintiff demanded a formal hearing before a Regional Physical Evaluation Board (the "RPEB").

The RPEB functions as the intermediate level of the Department of the Navy's physical disability evaluation. The RPEB makes recommendations with regard to physical fitness for active duty on the basis of formal personal hearings conducted in the presence of the member being evaluated and or counsel. SECNAVINST 1850.4 § 0805d(1). The RPEB considers all documentary evidence transmitted to it by proper authorities. On April 27, 1982, the RPEB submitted its findings:

As to the accident investigation itself, the *preponderance of evidence* indicates that member drove his motorcycle solo after leaving a bar in the early AM hours and the weather was damp and foggy. He apparently was wearing a helmet. A

blood alcohol level shortly after the accident was reported as 0.23% which is indicative of significant intoxication and significant impairment of his faculties. There was no evidence of intervening causes in the accident such as other vehicles or a malfunctioning motorcycle. Thus, this board considers member unfit for duty in the United States Navy due primarily to his persisting diabetes insipidus. His disability is considered to be the result of his own misconduct or negligence and is therefore not ratable.

(Emphasis added.)

If a servicemember disagrees with the RPEB's findings, the member is entitled to submit rebuttal comments to the Physical Review Council (the "PRC"), identifying the disputed recommended findings, together with proposed alternate recommendations acceptable to the member. SECNAVINST 1850.4 § 0805h.

The PRC functions as the third, and normally final, level of the Navy's physical disability evaluation. *Id.* § 0903(a). The PRC conducts evaluations based upon documentary review of all records previously associated with the case. The PRC makes its own determination and, if disability is found, also determines whether the disability was the result of intentional misconduct or willful neglect. Excluding any cases designated by the Secretary of the Navy, the President of the PRC acts for the Secretary, promulgating the findings of the PRC and directing final disposition consistent with those findings.

On May 27, 1982, the PRC concurred with the recommendations of the RPEB, after considering all the evidence and plaintiff's rebuttal. By letter dated June 2, 1982, the Chief of Naval Personnel was advised that the Office of the Judge Advocate General had reviewed plaintiff's case for legal sufficiency pursuant to 10 U.S.C. § 5148 (1982), and that no legal objections to the council's findings were interposed.

On June 7, 1982, the findings of the PRC were promulgated by the council President on behalf of the Secretary of the Navy. The PRC found plaintiff to be unfit to perform the duties of his grade, rank, or rating on active duty because of physical disability due to intentional misconduct or willful neglect. Plaintiff subsequently received an honorable discharge from the Navy on June 25, 1982, without military disability benefits.

Plaintiff proceeded to file a claim for disability benefits with the Veterans Administration (the "VA"), relying on 38 U.S.C. § 331 (1982), which provides, in pertinent part:

For disability resulting from personal injury suffered ... in the line of duty ... during other than a period of war, the U.S. will pay to any veteran thus disabled and who was discharged or released under conditions other than dishonorable from the period of service in which said injury ... was incurred, ... compensation as provided in this subchapter, but no compensation shall be paid if the disability is the result of the veteran's own willful misconduct.

On November 18, 1982, the VA issued an administrative decision. The VA concluded that the combined factors, *i.e.*, high blood alcohol count, advice from friends not to operate the motorcycle, investigating officer's conclusion that rate of speed was excessive, indicated that plaintiff's operation of his motor cycle was so "unreasonable and dangerous as to constitute a wanton and reckless disregard of the probable consequences." VA Regulation 1001(N) defined this behavior as willful misconduct.

Approximately four years after the VA denial, plaintiff, pursuant to 10 U.S.C. § 1552(a) (1982), filed an application with the Board for Correction of Naval Records (the "BCNR"). The BCNR received the application on February 5, 1987. Plaintiff contended that the finding of "not in the line of duty due to misconduct" was both erroneous and unjust. He argued that the facts conclusively established reversible legal error in the procedures by which disability benefits were denied, reversible factual error concerning the unsupportable conclusions reached, and fundamental unfairness in the unwarranted suffering he has continued to endure. Plaintiff urged the BCNR to exercise its statutory authori-

ty by overruling the results of the Naval Physical Disability Evaluation System, providing for retroactive and prospective receipt of disability benefits, awarding all other appropriate relief, and amending his military records accordingly.

On April 14, 1988, plaintiff filed suit in this court, and on June 2, 1988, the court suspended the case pending a decision by the BCNR. The BCNR subsequently denied plaintiff's application for disability benefits on February 6, 1989. The BCNR's decision adopted the reasoning of an advisory opinion, which states, in pertinent part:

12. We are of the opinion that the blood alcohol level of 0.23 percent recorded by medical authorities subsequent to the accident provides the necessary evidence concerning the first two elements of finding that the petitioner's injuries were incurred as the proximate result of voluntary intoxication notwithstanding the statements of the witnesses that the petitioner did not appear intoxicated prior to the accident. The blood alcohol test conducted by medical authorities constitutes credible objective evidence of the petitioner's intoxication that outweighs the observations of his fellow servicemembers who undoubtedly had been consuming alcoholic beverages themselves. A blood alcohol level of that degree clearly establishes that the member's physical or mental faculties were impaired. Additionally, it constitutes clear evidence as to the extent of the impairment. Virtually all medical texts concerning the effect of alcohol upon the ability to operate a motor vehicle agree that a blood alcohol content of that level renders a person intoxicated and incapable of safely operating a motor vehicle. This is even more so in the case of a motorcycle, an inherently unstable two-wheeled vehicle requiring balance, coordination and agility to operate safely.

13. As to the third element required to find misconduct on the basis of intoxication alone, the Regional Physical Evaluation Board had before it sufficient evidence to justify [its] determination that the petitioner's injuries were the proximate result of his impairment. The member was proceeding on a straight and level stretch of highway while significantly impaired due to his intoxication. There is no evidence contained in the record of proceedings to indicate that the accident was anything other than the failure of the member to maintain proper direction on a straight and level road. There is no evidence of a loss of traction as alleged by the petitioner. Although the investigating police officer did not list intoxication as a cause of the accident, his report indicates that the did not speak to the petitioner at the scene of the accident because he was receiving medical treatment at the time. Additionally, there is no indication that the police officer was ever aware of the results of the blood alcohol test. The Board would have been justified under these circumstances to find that his leaving the road resulted solely from his intoxication. The petitioner also complains that the rationale of the Regional Physical Evaluation Board did not specifically set forth a finding that the member's impairment was the proximate cause of the injury. However, reference (c) only requires that the Board determine that impairment was the proximate cause of the injury. It does not require that a finding of proximate cause be set forth in the rationale.

14. However, even should the evidence have been insufficient to find that the member's injuries were the proximate result of his intoxication, there is other clear and convincing evidence that the injuries were the result of his gross negligence. Paragraph 0202b of reference (c) provides that to support a finding of misconduct by a component of the Disability Evaluation System, it must be established by clear and convincing evidence that the injury was either intentionally incurred or was the proximate result of such gross negligence as to demonstrate a reckless disregard of the foreseeable consequences. Although "clear and convincing" evidence is not defined in reference (c), it is generally defined in law dictionaries as the degree

of proof which will produce in the mind of a fact finder a firm belief or conviction.

15. Here the evidence set forth in the JAG Manual investigation is sufficient to find that the petitioner operated a motorcycle while intoxicated and at an excessive speed for the adverse weather and road conditions. It should be noted, that the road and weather conditions were such that the individuals who were with the petitioner at the bar before the accident occurred strongly encouraged him to ride home in their automobile and not attempt to ride back to the base aboard his motorcycle. The extent of the encouragement was such that one of these individuals actually took the petitioner's motorcycle helmet and gloves away from him in an attempt to discourage him from using his motorcycle.

16. Consequently, the record contains clear and convincing evidence that the petitioner was operating his motor vehicle while intoxicated and at a speed in excess of the maximum safe speed considering the adverse road and weather conditions. This combination of driving the motorcycle at a speed in excess of the maximum safe speed while intoxicated to the extent indicated by the petitioner's blood alcohol content upon admission to the hospital constitutes clear and convincing evidence that the petitioner was operating his motorcycle in a grossly negligent manner and fully supports a determination that he was operating his motorcycle in a grossly negligent manner at the time of the accident. The evidence of record further constitutes clear and convincing evidence that the petitioner's grossly negligent operation of his motorcycle at excessive speed and while intoxicated· caused him to loose control of the vehicle, resulting in the vehicle leaving the road and striking a pole thereby causing his disabling injuries. Consequently, the various components of the Disability Evaluation System were justified in finding that the petitioner's disabling injuries were the result of misconduct as defined by reference (c).

17. The petitioner further contends that the Regional Physical Evaluation Board applied the wrong standard of proof in determining [its] misconduct findings in his case. He bases this contention on the statement in the rationale that "the preponderance of evidence indicates that member (sic) drove his motorcycle solo after leaving a bar in the early a.m. hours and the weather was damp and foggy." There is no doubt upon reviewing the investigation that the member did in fact drive his motorcycle by himself after leaving a bar in the early morning hours and that the weather was damp and foggy at the time. *There is no other indication in the rationale that the Regional Physical Evaluation Board used the preponderance of evidence standard in determining other facts or in arriving at [its] findings of misconduct.* However, should the Regional Physical Evaluation Board have in fact utilized the incorrect standard of proof in determining [its] findings in this case, a *de novo* review of the case would establish the same facts that the Regional Physical Evaluation Board determined and these facts support the findings of misconduct in this case under the clear and convincing standard.

(Emphasis added.)

In its decision the BCNR stated:

[T]he Board substantially concurred with the comments contained in the advisory opinions. Your contentions that the wrong standard of proof was employed by the Regional Physical Evaluation Board, by clear and convincing evidence that you were significantly impaired as a result of your voluntary intoxication or that your disabilities were the proximate result of your intoxication, were rejected by the Board. It was unable to conclude that there is any reasonable explanation for the accident which resulted in your disabilities other than your willful neglect in operating a motor vehicle in a grossly intoxicated state.

## DISCUSSION

█ The issue presented is whether the correction board may substitute its find-

ings according to the appropriate legal standard once a final determination has been rendered by the Secretary of the Navy, having adopted the recommendations of specialized disability boards based on an incorrect legal standard.

In pertinent part 10 U.S.C. § 1552(a) provides:

> The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice. . . .

While the statute confers a certain amount of discretion on the Secretary acting through a civilian correction board, the Secretary may not act in an arbitrary, capricious manner, unsupported by substantial evidence, or in violation of the law. *Sanders v. United States*, 219 Ct.Cl. 285, 299, 594 F.2d 804, 811–12 (1979).

The reviewing court cannot overturn a determination made by the military with respect to disability retirement, absent an violation of a statute or regulation, *Curry v. United States*, 221 Ct.Cl. 741, 746, 609 F.2d 980, 983 (1979), unless the plaintiff shows " 'by cogent and clearly convincing evidence' " that such a determination is arbitrary, capricious, or not supported by substantial evidence. *Finn v. United States*, 212 Ct.Cl. 353, 356, 548 F.2d 340, 342 (1977) (quoting *Stephens v. United States*, 174 Ct.Cl. 365, 371–72, 358 F.2d 951, 954 (1966)). "Judicial deference to administrative decisions of fitness for duty of service members is and of right should be the norm. . . ." *Maier v. Orr*, 754 F.2d 973, 984 (Fed.Cir.1985). The Federal Circuit in *Maier* relied on *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983):

> It is equally settled that responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province; and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence.

(Footnotes omitted.)

In *Sanders* the Court of Claims noted that correction board actions have been reviewed in terms of the liberal mandate of the statue to correct errors and remove injustices. Failure to follow the purpose of the statute has been remedied by the courts, a practice sanctioned by decisions for over two decades, with no complaint from Congress. This was so even before the court's authority to correct records was made explicit in 1972 by amendment of the Tucker Act:

> To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and central to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. . . .

28 U.S.C. § 1491 (1976).

Plaintiff contends that the central issue presented in his application to the BCNR was whether the PDE system committed error in 1982 by denying his entitlement to disability benefits in "blatant violation" of its own regulations. Plf's Br. filed Sept. 15, 1989, at 17. According to plaintiff, the BCNR did not even address this issue. Rather, the BCNR, acting as a "super" physical evaluation board, reviewed the matter *de novo* and decided that the record supported denial of relief based on clear and convincing evidence and that the Navy disability boards could have made these findings.

Had plaintiff's BCNR application represented the very first action of his entitlement to disability benefits, the BCNR properly could have made its own final decision on the basis of the record presented consonant with *Friedman v. United States*, 159 Ct.Cl. 1, 17, 310 F.2d 381, 392 (1962), *cert. denied sub nom. Lipp v. United States*, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963). Plaintiff asserts, however, that the BCNR was sitting as an appellate authority

in reviewing the actions of subordinate boards. Plaintiff further contends that the Secretary of the Navy delegated his statutory authority to subordinate tribunals to make final decisions regarding disability matters. The BCNR was not created to substitute for specialized administrative boards unless it sat as a factfinder in the first instance. Thus, plaintiff insists that the BCNR cannot simply retry a case because it would have reached a different result.

Defendant argues that the proper focus of this court's inquiry is the BCNR's decision to deny disability benefits based on its own review of the circumstances. Defendant states that, assuming the specialized boards violated the governing regulation by utilizing an incorrect standard, the fundamental question remains as to whether the decision of the BCNR, utilizing the correct standard of proof, is arbitrary, capricious, or unsupported by substantial evidence.

 When an eligibility determination has been committed to the expertise of a specialized review board, the military correction boards review its decisions. *See Muse v. United States*, 13 Cl.Ct. 372, 382 (1987) (citing *Sherengos v. Seamans*, 449 F.2d 333, 334 (4th Cir.1971)). Review of disability claims constitutes a narrow exception to this precept, since a servicemember can bypass the specialized boards and present his claim in the first instance to a correction board, as a "proper board" to act—the decision by a proper board being a prerequisite to bringing suit on the claim. *Friedman*, 159 Ct.Cl. at 13, 310 F.2d at 389 (citing cases). Once a decision by a proper board has been obtained, a correction board or a court may consider in the first instance any evidence in respect of the disablement arising after the date a disability was denied or a partial rating upheld. *See Haldane v. United States*, 1 Cl.Ct. 691, 695 (1983) (citing cases) (order allowing receipt of affidavits on servicemember's current medical condition).

Plaintiff's quest for disability benefits began when a medical board convened to determine his present state of health. His claim proceeded through the PDE system until the PRC ultimately denied relief based on an incorrect standard of proof—a preponderance of evidence, instead of clear and convincing evidence. When plaintiff finally applied to the BCNR for relief, the sole issue remaining was whether the PDE system denied his entitlement to disability benefits in violation of the governing regulations. Plaintiff did not present the BCNR with a claim of first impression, since several subordinate tribunals had already determined his unfitness for military duty.

Defendant argues that regardless of whether the board applied the standard mandated by regulation, "the fundamental question" is whether the correction board's action is arbitrary, capricious or unsupported by substantial evidence. Def's Br. filed July 28, 1989, at 18. Citing *Sorrough v. United States*, 155 Ct.Cl. 464, 470, 295 F.2d 919 (1961) (per curiam), defendant asserts that as long as the administrative determination is supported by substantial evidence, it must be accepted by the court.

Plaintiff in *Sorrough* suffered from cirrhosis of the liver, seemingly due to excessive use of alcohol and poor eating habits. An Air Force physical evaluation board was convened to review plaintiff's case and diagnosed him as unfit for further military duty. The Air Force Physical Review Council overturned the disability determination, finding that plaintiff was not debilitated, but fit for active duty. Pursuant to this decision, the Air Force would later release plaintiff from active duty under a reduction-in-force program, without disability benefits, as opposed to retirement for physical disability. The Air Force Board for the Correction of Military Records (the "AFBCMR") agreed with the physical evaluation board that the record supported a finding of disability. However, it was left to the AFBCMR to make findings as a matter of first instance whether plaintiff's disability was due to his intentional misconduct. *See* 155 Ct.Cl. at 467, 477. Neither Air Force medical review board had attempted the determination, as the meticulous findings of then-Trial Commissioner

Mastin G. White revealed. Thus, *Sorrough* merely stands for the proposition that the court will not disturb findings of a correction board supported by substantial evidence, but does not speak to the circumstances presented by the case at bar.

█ The BCNR has an affirmative duty to correct errors and remove injustices in a serviceman's records pursuant to 10 U.S.C. § 1552(a). *Duhon v. United States*, 198 Ct.Cl. 564, 568, 461 F.2d 1278 (1972). Error can be defined as either legal or factual. Injustice, when not also error, is treatment by the military authorities that shocks the sense of justice. *Reale v. United States*, 208 Ct.Cl. 1010, 1011, 529 F.2d 533, *cert. denied*, 429 U.S. 854, 97 S.Ct. 148, 50 L.Ed.2d 129 (1976). When a correction board fails to correct an injustice clearly presented in the record, it is acting in violation of its mandate. *Id.* If a board, when asked, fails to correct an error, courts will correct it on judicial review.

In *Sanders* the correction board committed legal error in apply the wrong standard of review. The Court of Claims stated:

> In suggesting that plaintiff would not have been promoted even if the defendant had not, by admitted "administrative oversight," committed the admitted errors, the Correction Board is usurping the functions of the selection board, making itself a sort of super selection board, instead of correcting the error and injustice as its charter contemplates and as we think it mandates on this record. Correction boards have a statutory duty to determine whether there has been error or injustice and "to grant thorough and fitting relief."

219 Ct.Cl. at 309, 594 F.2d at 817 (quoting *Yee v. United States*, 206 Ct.Cl. 388, 512 F.2d 1383 (1975)).

In the case at bar, the Manual establishes a presumption that an injury suffered by a member was incurred in the line of duty and that clear and convincing evidence is required to overcome this presumption. The RPEB, however, denied plaintiff his entitlement to disability benefits based on an erroneous standard of proof, *i.e.*, a preponderance of evidence. The PRC accepted this decision when it concurred in the RPEB's recommended findings. The Secretary by delegation approved the decision.

It is speculative to reason that the specialized boards applied the incorrect standard while intending the higher standard of clear and convincing evidence. Indeed, they might well have rejected the higher standard—the investigating officer did not make any notation concerning alcohol. Yet, plaintiff's blood alcohol level was a factor persuasive to the BCNR that the record contained the requisite clear and convincing evidence of misconduct; and the author of the advisory opinion relied on by the BCNR felt obliged to offer a plausible explanation for the officer's failure to mention alcohol. The evidence concerning whether the accident occurred on a straight and level road or around a bend was conflicting. The specialized boards made no finding on point. The BCNR's review supplied the finding. It is also speculative to reason that the specialized boards confused the standard because the record was so seeped in manifestations of plaintiff's misconduct that they focused on the evidence, not the standard of proof. The boards may have meant what they said. It can only be concluded that the specialized boards applied the wrong standard.

In its reply brief, defendant took the position that the RPEB's and PRC's error was harmless. A court may review a substantial error going to the heart of the administrative process. *See Sanders*, 219 Ct.Cl. at 307–08, 594 F.2d at 816–17. In this case the error was fundamental in that it affected how all the evidence was evaluated. Applying the incorrect legal standard did not involve merely excluding some evidence or admitting tainted evidence or failing to consider other evidence. The error permeated the evaluation of any and all evidence by the specialized boards. Indeed, in order to correct the error, the BCNR reevaluated all the evidence and made findings on the basis of what the specialized boards could have found in the record.

*Doyle v. United States*, 220 Ct.Cl. 285, 599 F.2d 984 (1979), *cert. denied*, 446 U.S.

982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980), illustrates an option the BCNR may have exercised. The Army Board for the Correction of Military Records (the "ABCMR") discovered an illegally constituted promotion board. The ABCMR ordered a reconstituted promotion board to consider plaintiff's promotability; the ABCMR did not supply its own judgment, as did the correction board in this case. Once plaintiff had obtained a decision from a proper board, the PRC in the case at bar, the BCNR could not ignore the fact-finding that had taken place, but assumed the mantle of a reviewer.

One aspect of defendant's argument for harmless error is that the evidence of plaintiff's misconduct is so compelling. Drawing a parallel to *Doyle*, this position in effect contends that the ABCMR in that case could have opined that the servicemember was unpromotable and so dispensed with a decision by the appropriate fact finder. Of course, such action would not have withstood judicial scrutiny.

■ In administering its disability system, the Navy put in place regulations of the Navy's own choosing and is bound by their terms. *Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *Cruz–Casado v. United States*, 213 Ct.Cl. 498, 502–03, 553 F.2d 672, 675 (1977) (Army); *Bray v. United States*, 207 Ct.Cl. 60, 80, 515 F.2d 1383, 1394–95 (1975) (per curiam) (Air Force). The Navy chose to accord a servicemember a favorable presumption and light burden of proof. The Navy cannot elude the consequence of its choice of a legal standard. If the correct legal standard is not applied, the decision cannot stand, no matter how egregious the evidence. Moreover, in this case the record is capable of supporting a preponderance standard and not a clear and convincing one, so that the specialized boards may have meant what they said. This does not mean that the BCNR's evaluation of the evidence is assailable: Plaintiff could not show by cogent and clearly convincing evidence that the record before the BCNR failed to demonstrate clear and convincing evidence of his misconduct. Rather, the BCNR erred in evaluating the evidence itself after the specialized disability boards committed legal error.

At argument defendant contended that plaintiff should be denied relief because he did not satisfy the statutory criteria for an entitlement and should not be granted relief because an error took place in the administrative process. Defendant supplied as authority *Mayer v. United States*, 201 Ct.Cl. 105 (1973). Plaintiff aptly distinguished *Mayer* on the basis that the case held that if Congress specifies qualifications entitling a servicemember to a benefit, *i.e.*, the minimum age and length of service prerequisites to retirement pay of 10 U.S.C. § 1331(a) (1988), the Secretary of the Air Force cannot change them. In the present case, Congress did not supply the criteria in 10 U.S.C. § 1207 for denying disability status, but authorized the Secretary of the Navy to prescribe them. It was the legal error in following the standards, once promulgated by the Secretary, that forms the basis of plaintiff's claim.

The PRC erred by denying plaintiff relief based on a lower standard of proof. The denial of disability benefits was a nullity. The decision of the BCNR upholding the denial based on the correct standard of review was contrary to law.

## CONCLUSION

Based on the foregoing, plaintiff's cross-motion for summary judgment is granted, and defendant's motion for summary judgment is denied. Plaintiff shall have his disability retirement benefits retroactive from the date of his discharge, June 25, 1982. The Secretary of the Navy shall correct and amend plaintiff's Naval records to show that he was medically discharged with a 30 percent combined disability. The parties shall file a stipulation of the amount of judgment by January 19, 1990, following which the Clerk of the Court shall enter judgment accordingly.

IT IS SO ORDERED.