**Matthew H. SAWYER,
Plaintiff–Appellee,**

v.

**The UNITED STATES,
Defendant–Appellant.**

**No. 90–5101.**

United States Court of Appeals,
Federal Circuit.

April 23, 1991.

---

Guy J. Ferrante, King & Everhard, P.C., Falls Church, Virginia, argued, for plaintiff-appellee.

James M. Kinsella, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for defendant-appellant. With him on the brief, were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director. Also on the brief, was Captain Robert C. Barber, Office of The Judge Advocate Gen., Dept. of the Navy, Alexandria, Va., of counsel.

Before MARKEY, MAYER and PLAGER, Circuit Judges.

## OPINION

MAYER, Circuit Judge.

The United States appeals the judgment of the Claims Court awarding Matthew H. Sawyer disability benefits and ordering correction of his military records to reflect a medical discharge with thirty percent combined disability. 18 Cl.Ct. 860 (1989). We reverse.

### Background

During the damp and foggy early morning hours of October 4, 1981, Sawyer was severely injured when he apparently lost control of his motorcycle and crashed as he returned home from his birthday celebration near Coos Bay, Oregon. Other Navy personnel came upon the accident, administered first aid and called for help. The initial police report attributed the accident primarily to speeding and secondarily to wet pavement, but about an hour later, Sawyer's blood alcohol level measured 0.23 percent. The Commander of the Naval Medical Command reported that his blood alcohol reading "is twice that of many state laws allowing prosecution for operating a motor vehicle while under the influence of alcohol and also exceeds the limit indicating intoxication."

Thereafter, the Navy examined Sawyer's fitness for duty and entitlement to disability benefits for which under 10 U.S.C. §§ 1201–1221 (1988) the secretaries of each military service make the final determination. Section 1201 enables a secretary to authorize disability retirement pay for a service member if the disability is not the result of the member's intentional misconduct or willful neglect,* and section 1207

---

\* Section 1201 states:

Upon a determination by the Secretary concerned that a member of a regular component of the armed forces entitled to basic pay, or any other member of the armed forces entitled to basic pay who has been called or ordered to active duty (other than for training under section 270(b) of this title) for a period of more than 30 days, is unfit to perform the duties of his office, grade, rank, or rating because of physical disability incurred while entitled to basic pay, the Secretary may retire the member,

expressly prohibits a secretary from authorizing benefits to any member who becomes unfit for duty because of a physical disability that the secretary determines resulted from his "intentional misconduct or willful neglect."

The regulations promulgated by the Secretary of the Navy pursuant to section 1216(a) define "intentional misconduct or willful neglect" and create review boards to conduct investigations and recommend findings on members' fitness for duty and entitlement to disability benefits. The regulations establish a presumption, rebuttable by clear and convincing evidence, that an injury occurred in the line of duty and list circumstances, among them misconduct, that place a member's injuries outside the line of duty and prevent him from receiving disability benefits. Misconduct includes voluntary intoxication when impairment of physical or mental faculties and the extent of that impairment can clearly be shown and it is clear that the impairment was the proximate cause of injury.

The regulations establish three boards to provide initial, intermediate and final review. The Central Physical Evaluation Board (CPEB) conducts the initial review of the member's service and health records and the line of duty investigation which has been conducted in accordance with the Manual of the Judge Advocate General. That investigation of Sawyer's accident initially recommended a finding that his injuries occurred in the line of duty because he was in authorized liberty status at the time of his accident. But the reviewing authority disapproved that finding and found clear and convincing evidence that Sawyer's injuries resulted from his own misconduct. The CPEB reached the same result and submitted findings that Sawyer was unfit for military service as a result of his own misconduct.

Following the CPEB's decision, Sawyer demanded a formal hearing before the intermediate Regional Physical Evaluation Board (RPEB). The RPEB also found Sawyer unfit for duty because of his own misconduct. The rationale for its conclusion was:

> As to the accident investigation itself, the *preponderance of the evidence* indicates that member drove his motorcycle solo after leaving a bar in the early AM hours and the weather was damp and foggy. He apparently was wearing a helmet. A blood alcohol level shortly after the accident was reported as 0.23% which is indicative of significant intoxication and sufficient impairment of his faculties. There was no evidence of intervening causes in the accident such as other vehicles or a malfunctioning motorcycle. Thus, this board considers member unfit for duty in the United States Navy due primarily to his persisting diabetes insipidus. His disability is considered to be the result of his own misconduct or negligence and is therefore not ratable. (Emphasis added.)

Sawyer then secured review by the third board, the Physical Review Council (PRC), which also ruled that he was not fit for duty because of a physical condition caused by his intentional misconduct or willful neglect. After the Judge Advocate General reviewed the case for legal sufficiency and interposed no objection, the President of

---

with retired pay computed under section 1401 of this title, if the Secretary also determines that—

(1) based upon accepted medical principles, the disability is of a permanent nature and stable;

(2) the disability is not the result of the member's intentional misconduct or willful neglect, and was not incurred during a period of unauthorized absence; and

(3) either—

(A) the member has at least 20 years of service computed under section 1208 of this title; or

(B) the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Veterans' Administration at the time of the determination; and either—

(i) the member has at least eight years of service computed under section 1208 of this title;

(ii) the disability is the proximate result of performing active duty;

(iii) the disability was incurred in line of duty in time of war or national emergency; or

(iv) the disability was incurred in line of duty after September 14, 1978.

10 U.S.C. § 1201 (1988).

the PRC promulgated findings on behalf of the Secretary that resulted in denial of disability benefits.

Sawyer next applied to the Board for Correction of Naval Records (BCNR) to correct his service record and for retroactive and prospective disability benefits. The BCNR, like the review boards, acts on behalf of the Secretary, *see* 32 C.F.R. § 723.1(a) (1990), and under 10 U.S.C. § 1552(a) (1988), the Secretary may correct a military record when he deems it necessary to correct an error or remove an injustice.

The BCNR reviewed Sawyer's application and supporting materials, his service record and advisory opinions furnished by the Naval Medical Command and the Judge Advocate General. It rejected Sawyer's first contention that the RPEB evaluated the evidence using an erroneous standard, preponderance of the evidence rather than clear and convincing. Alternatively, it examined the evidence for itself, as it was invited to in Sawyer's application and rejected his argument that significant impairment as a result of voluntary intoxication had not been established by clear and convincing evidence. The BCNR decided that there was no reasonable explanation for the accident other than his willful neglect in operating a motor vehicle in a grossly intoxicated state, and that there was insufficient evidence to establish probable material error or injustice. *See* 32 C.F.R. § 723.3(e)(2) (1990).

Sawyer filed suit in the Claims Court alleging that the BCNR improperly denied him disability retirement. The court held that the review boards used the wrong standard to evaluate Sawyer's conduct and determine his entitlement to disability benefits which rendered the Secretary's denial of benefits based on their actions "a nullity." 18 Cl.Ct. at 869. It agreed with the BCNR's evaluation of the evidence, saying that it was not assailable because Sawyer "could not show by cogent and clearly convincing evidence that the record before the BCNR failed to demonstrate clear and convincing evidence of his misconduct." *Id.* But it nonetheless ordered that he have

disability benefits on the ground that "[t]he decision of the BCNR ... was contrary to law" because "the BCNR erred in evaluating the evidence itself after the specialized disability boards committed legal error." *Id.* With both the review boards' actions and the BCNR's decision thus invalidated, the court deemed the regulatory presumption that Sawyer's injury occurred in the line of duty unrebutted.

### Discussion

■ Preliminarily, we dispose of the government's argument that the Claims Court had no jurisdiction under the Tucker Act, 28 U.S.C. § 1491 (1988), because Sawyer's claim was not founded on a statute which mandated the payment of money. *See United States v. Mitchell*, 463 U.S. 206, 216, 103 S.Ct. 2961, 2967, 77 L.Ed.2d 580 (1983). We think there is a "source of substantive law ... [which] 'can fairly be interpreted as mandating compensation ...,'" *id.* at 217, 103 S.Ct. at 2968, which sets out a right to recover "expressly or by implication." *Id.* at n. 16. According to 10 U.S.C. § 1201, the Secretary may retire a service member "entitled to basic pay" for disability that did not result from his own misconduct or willful neglect, and order that he receive retired pay. The Secretary has no discretion whether or not to pay active duty service members, they are statutorily entitled to the pay of their positions until the entitlement is lawfully terminated. *See* 37 U.S.C. § 204 (1988); *Sanders v. United States*, 594 F.2d 804, 810, 219 Ct.Cl. 285 (1979). And once he finds a disability qualifying, he likewise has no discretion whether to pay out retirement funds. The word "may" in section 1201 does not convey discretion whether or not to pay, it merely permits the Secretary to terminate a member's active duty early and tap the Treasury for the disability retired pay. Otherwise, at least under the facts we have, the member would remain on active duty. Either way, he would statutorily be entitled to money, unless the disability is not in the line of duty.

This scheme is similar to 10 U.S.C. §§ 1181 and 1184 which say the Secretary "may" separate officers for misconduct or

poor performance. Cases based on those laws are, as the government says, "indisputably within the Claims Court's jurisdiction ... [because] a discharged service member has the right to continued pay for that position until lawfully removed." So, too, here. Sawyer is entitled to disability pay unless it is lawfully withheld, and that, of course, goes to the merits to which we now turn.

■ In our view, the Claims Court unduly restricted the authority of the BCNR when it reasoned that after review boards have acted, the BCNR may only act in an appellate capacity. 18 Cl.Ct. at 869. In the first place, the BCNR did no more than respond to the two bases for relief Sawyer set out in his application. He argued that the "preponderance of the evidence" language used by the RPEB showed that the boards measured his conduct against an incorrect legal standard; but he also argued that an examination of the evidence available in the case could not support a finding of clear and convincing evidence that the disability resulted from his own misconduct. There is no reason why the BCNR could not address both of these arguments. Its own regulations contemplate that it will find facts and not act only as an appellate forum in cases such as this one. See 32 C.F.R. § 723.6(a)(3) and (c) (1990). The regulations defining its activity make no distinction between cases in which the review boards have previously acted and those in which the BCNR is the first body to consider the claim. In all cases, it reviews the *application* of the claimant and any supporting documents to determine whether there is error or injustice. See id. § 723.2(b); see also Selman v. United States, 723 F.2d 877, 880 (Fed.Cir.1983).

Here, the BCNR disagreed with Sawyer's first point saying he presented insufficient evidence that the RPEB based its recommendations on the incorrect standard of proof. In the Claims Court, Sawyer argued that the BCNR did not even address his contention that the review boards violated the Navy's regulations in denying his claim because they had used the wrong standard. But this is incorrect; the

BCNR's decision expressly stated that "[a]fter careful and conscientious consideration of the entire record, ... [y]our contention[ ] that the wrong standard of proof was employed by the [RPEB] ... w[as] rejected by the Board." The BCNR simply did not accept Sawyer's argument that the RPEB's single use of the phrase "preponderance of the evidence" was enough to show that the review boards evaluated his claim under the wrong standard.

The Claims Court disagreed with the BCNR, saying that "[i]t is speculative to reason that the specialized review boards applied the incorrect standard while intending the higher standard of clear and convincing evidence." 18 Cl.Ct. at 868. The court concluded that this error "permeated the evaluation of any and all evidence by the specialized boards," id., making the denial of disability benefits by the PRC a "nullity." Id. at 869. For the dispositive reason that follows, however, it is not necessary for us to enter this debate.

As Sawyer asked, the BCNR also reviewed his application together with supporting information and the advisory opinions from the Naval Medical Command and the Judge Advocate General and determined that there was clear and convincing evidence that Sawyer was voluntarily intoxicated and that his disabilities were the proximate result of that intoxication. The Claims Court thought the BCNR's action on the case de novo was contrary to law because of a passage in Sanders, 594 F.2d at 817, that "the Correction Board is usurping the functions of the selection board, making itself a sort of super selection board, instead of correcting the error and injustice as its charter contemplates." 18 Cl.Ct. at 868. But as the Claims Court also recognized, id. at 867, in disability cases either the review boards or the correction board is competent to make a disability determination in the first instance. Sanders was a discharge case, not a disability case, and the correction board did not have authority to sit as a selection board.

Moreover, if the court was correct that the review boards' denial of disability benefits was a "nullity," then the BCNR was

doing no more than exercising its authority as a "proper board" to hear the disability claim. *See Real v. United States,* 906 F.2d 1557, 1562 (Fed.Cir.1990). Regardless of what the review boards did, or failed to do, the BCNR had the power to evaluate Sawyer's entitlement to disability benefits. Both sets of authorities act on behalf of the Secretary, and we can see no reason why the secretarial responsibility over disability retirements cannot be exercised by either or both of them. There is sufficient flexibility in the system to permit the boards to complement or supplement one another in the interest of reaching a just result.

The Claims Court admitted the BCNR's evaluation was not "assailable," that Sawyer "could not show by cogent and clearly convincing evidence that the record before the BCNR failed to demonstrate clear and convincing evidence of his misconduct." 18 Cl.Ct. at 869. We agree. The court ordered disability benefits not because it thought Sawyer was entitled to them, but because "the BCNR erred in evaluating the evidence itself after the specialized disability boards committed legal error." *Id.* at 869. Since we disagree that the BCNR exceeded its authority, its decision must stand.

### Conclusion

Accordingly, the judgment of the Claims Court is reversed.

### COSTS

No costs.

REVERSED.