**Steven B. KINDRED, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 96–43 C.**

United States Court of Federal Claims.

June 9, 1998.

---

**2.** Plaintiff's opposition to Sun's motion to certify    is noted.

J. Byron Holcomb, Bainbridge Island, WA, for plaintiff.

Mark T. Quinlivan, with whom were Assistant Attorney General Frank W. Hunger, Vincent M. Garvey and Randolph Blair, Washington, DC, for defendant.

## OPINION and ORDER

TURNER, Judge.

Plaintiff, a former Navy officer, seeks compensation under 28 U.S.C. § 1491(a) and 37 U.S.C. § 204 for his allegedly unlawful discharge from the Navy for homosexual conduct. This case stands on defendant's motion to dismiss or for summary judgment and plaintiff's cross-motion for summary judgment. For reasons set forth below, we conclude that defendant's motion to dismiss or for summary judgment should be denied and that plaintiff's cross-motion for summary judgment should be granted.

### I

At the outset, it is appropriate to describe the administrative discharge procedures applicable to plaintiff's case. Under the authority of 10 U.S.C. § 1181(b), naval regulations direct that when an officer does not "maintain required standards of . . . personal conduct," he "may be processed for separation." Secretary of Navy Instruction (SECNAVINST) 1920.6A, Enclosure (3), ¶ 1 (November 21, 1983). The process begins when the Chief of Naval Personnel (CHNAVPERS) and the Deputy Chief of Staff for Manpower and Reserve Affairs (DC/S (M & RA)) review the service member's record and the evidence of misconduct. SECNAVINST 1920.6A(13)(c) (March 17, 1993). These officials are the "Show Cause Authority" and "determine whether an officer should be required to show cause for retention in the naval service." *Id.*

If the records support "by a preponderance of the evidence" the conclusion that misconduct occurred, CHNAVPERS or DC/S (M & RA) refers the case to a Board of Inquiry (BOI) under the authority of 10 U.S.C. § 1182. SECNAVINST 1920.6A, Enclosure (8), ¶ 1(b)(1)(a) (March 17, 1993). An officer subject to a BOI proceeding has the right to have counsel present, to testify, to call and question witnesses, and to submit evidence. 10 U.S.C. § 1185(a)(3); SECNAVINST 1920.6A, Enclosure (8), ¶ 2(f) (March 17, 1993). However, because a BOI hearing is an administrative proceeding, the "rules of evidence do not apply . . . [and] evidence not admissible in a court of law may be" admitted. SECNAVINST 1920.6A, Enclosure (8), ¶ 2(j) (March 17, 1993). At the conclusion of the hearing, the BOI makes findings based on a "preponderance of the evidence." SECNAVINST 1920.6A, Enclosure (8), ¶ 2(k)(1) (March 17, 1993).

If the BOI recommends separation, it must refer the case to a Board of Review (BOR). 10 U.S.C. § 1182(c); SECNAVINST 1920.6A, Enclosure (8), ¶ 2(k)(2)(a) (March 17, 1993). The BOI submits its report, along with any "rebuttal or statement of the respondent" to CHNAVPERS or DC/S (M & RA), the convening authority of the BOR. SECNAVINST 1920.6A, Enclosure (8), ¶ 2(m) (March 17, 1993).

Under the authority of 10 U.S.C. § 1183, a BOR "review[s] the reports of [the] Board of Inquiry . . . and make[s] recommendations to the Secretary" of the Navy (Secretary). SECNAVINST 1920.6A, Enclosure (8), ¶ 3(a) (March 17, 1993). In this proceeding, the officer "does not have the right to appear before [the BOR] . . . or present any statement to the board, except the statement of rebuttal to the findings and recommendations of the Board of Inquiry." SECNAVINST 1920.6A, Enclosure (8), ¶ 3(d) (March 17, 1993). The BOR "shall review the record, the findings and recommendations of the

Board of Inquiry, and any minority reports or rebuttal submitted thereto." SECNA-VINST 1920.6A, Enclosure (8), ¶ 3(e) (March 17, 1993). If the BOR recommends separation, its report "shall be delivered to the Secretary, with any desired recommendations of the CHNAVPERS or DC/S (M & RA), for final determination." SECNA-VINST 1920.6A, Enclosure (8), ¶ 3(f)(1) (March 17, 1993). The Secretary may direct retention or separation. 10 U.S.C. §§ 1183(b), 1184; SECNAVINST 1920.6A, Enclosure (8), ¶ 3(f)(3) (March 17, 1993).

The separation procedure described above must be commenced when an officer is accused of committing homosexual acts. SEC-NAVINST 1920.6A, Enclosure (3), ¶ 1(b)(3) (November 21, 1983). However, the Navy allows service members who engage in homosexual conduct to remain in the service if certain retention factors are found by the BOI and approved by the BOR. The regulations specifically provide that an officer must be discharged if he:

> has engaged in ... a homosexual act, unless there are further approved findings that:
>
> 1.   such conduct is a departure from the member's usual and customary behavior; and
>
> 2.   such conduct under all the circumstances is unlikely to recur; and
>
> 3.   such conduct was not accomplished by use of force, coercion or intimidation by the member during any period of military service; and
>
> 4.   under the particular circumstances of the case, the member's continued presence in the naval service is consistent with the interest of the naval service in proper discipline, good order and morale; and
>
> 5.   the member does not desire to engage in or intend to engage in homosexual acts.

SECNAVINST 1920.6A, Enclosure (3), ¶ 1(b)(3)(a) (November 21, 1983). However, the officer may not "be retained without the approval of the Secretary of the Navy when an approved finding of homosexuality is made." SECNAVINST 1920.6A, Enclosure (3), ¶ 1(b)(3) (November 21, 1983). If the officer is discharged, his "[s]ervice will be characterized as Honorable or General ... unless aggravated acts are included in the findings." SECNAVINST 1920.6A, Enclosure (5), ¶ 2(e) (November 21, 1983).

If the officer seeks review of his discharge, he may petition the Board for Correction of Naval Records (BCNR).[1] The BCNR reviews the proceedings of the BOI and BOR for "an error or injustice, and, when appropriate, ... make[s] recommendations to the Secretary." 32 C.F.R. § 723.2(b) (1993). The BCNR will "determine whether to authorize a hearing, recommend that records be corrected without a hearing, or to deny the application without a hearing." 32 C.F.R. § 723.3(e)(1) (1993). "The [BCNR] may deny any application if it determines that insufficient relevant evidence has been presented to demonstrate the existence of probable material error or injustice." 32 C.F.R. § 723.3(e)(2) (1993). "When an ... application ... is denied without a hearing," the BCNR issues a written explanation in accordance with 32 C.F.R. § 723.3(e)(4) (1993). If the BCNR denies relief, no further action is taken within the Navy.

**II**

The following is undisputed. Plaintiff enlisted in the Navy on July 9, 1976 and served on active duty in the enlisted service for 13 years. On August 5, 1989, after completing the Enlisted Commissioning Program at Miami University, plaintiff was commissioned as a Regular Officer. Plaintiff eventually attained the rank of Lieutenant Junior Grade and was selected for promotion.

In 1993, plaintiff's adopted step-daughter accused him of sexually abusing her. The allegation was investigated by the Naval Investigative Service. As a result of this allegation, CHNAVPERS requested that plaintiff enter the Family Advocacy Program (FAP) and that a psycho-sexual evaluation be completed. FAP is a social services program

---

1.   A service member may seek review of his discharge in the Court of Federal Claims directly or he can proceed to the BCNR and then to the

Court of Federal Claims, as plaintiff has done in this case. *See, e.g., Poe v. United States,* 7 Cl.Ct. 40 (1984).

established by the Navy to "address ... child and spouse maltreatment, sexual assault and rape." SECNAVINST 1752.3(1) (Jan. 27, 1984). The program provides for treatment of service members and for investigation of allegations of abuse. *Id.* (See Part V–D below for further description of the FAP).

During program interviews, plaintiff underwent psycho-sexual evaluation. At this juncture, plaintiff was not the subject of any investigation or proceeding concerning homosexual conduct. To facilitate the psycho-evaluation, plaintiff was asked to give a complete account of his past sexual experiences. Plaintiff voluntarily complied and, in doing so, asserted that he had not molested his step-daughter, but revealed to a FAP counselor that he had been involved in a number of homosexual encounters—all but one taking place approximately four years before the evaluation. Plaintiff was not given warnings against self-incrimination immediately prior to FAP sessions, but was given such warnings by a FAP representative upon entering the program.

On May 12, 1993, information obtained from the evaluation, including the admission of homosexual conduct, was forwarded to plaintiff's Commanding Officer at Trident Training Facility (CO). On May 18, 1993, the CO forwarded the information to CHNAVPERS and recommended that plaintiff be separated from the Navy.

On July 15, 1993, CHNAVPERS directed the Commander, Naval Base, Seattle, (CNBS) to "convene a Board of Inquiry in accordance with" SECNAVINST 1920.6A. Admin. Rec. at 164–65. On September 13, 1993, CNBS appointed a BOI. Admin. Rec. at 157. The BOI was ordered to "comply with the provisions of [SECNAVINST 1920.6A]." Admin. Rec. at 158. CNBS informed plaintiff that "[t]he Show Cause Authority reviewed your case and determined that there [was] sufficient evidence of record to require you to show cause for retention in the Naval Service." Admin. Rec. at 159.

On October 13, 1993, the BOI met and conducted a hearing in which plaintiff testified. At the hearing, plaintiff denied that he had sexually abused his adopted daughter but admitted prior homosexual conduct. The BOI cleared plaintiff of all charges relating to sexual abuse, but separation with general discharge was unanimously recommended pursuant to Uniform Code of Military Justice (UCMJ), Article 133, "conduct unbecoming an officer and a gentleman," based on plaintiff's homosexual conduct. Admin. Rec. at 20–21.

After the BOI hearing, CNBS was responsible for (1) "[p]repar[ing] the [BOI's] report including a transcript of the proceedings" and "respondent's comments," (2) "[i]nform[ing] [plaintiff] that [the BOI's] report ... may become part of his official record," and (3) "afford[ing] [plaintiff] the opportunity to comment thereon." Admin. Rec. 165. On November 10, 1993, CNBS wrote a letter to plaintiff, via his CO, informing plaintiff that he was entitled to submit a rebuttal statement. Admin. Rec. at 72. On October 13, 1993, the BOI forwarded its findings to CNBS. Admin. Rec. at 20.

On November 29, 1993, plaintiff submitted a rebuttal statement to his Commanding Officer to support his case for retention. Admin. Rec. at 65–69. In the letter, plaintiff supported his past arguments for retention and specifically argued why he fulfilled each of the SECNAVINST 1920.6A retention factors. *Id.* The Commanding Officer submitted the statement to CNBS. In addition to forwarding the BOI's report, the transcript, and plaintiff's rebuttal statement, as originally directed by CHNAVPERS, CNBS attached her own letter discussing plaintiff's case. In the letter, the Commander refuted plaintiff's rebuttal statement and recommended discharge. Admin. Rec. at 22–23.

On February 2, 1994, a BOR, without opinion, concurred with the findings and recommendation of the BOI.[2] On February 15, 1994, CHNAVPERS recommended to the Secretary that plaintiff be separated by gen-

---

**2.** The BOR report is a letter from Capt. Arthur D. Neiman to CHNAVPERS, dated February 2, 1994. It does not appear in the administrative record, but was submitted to the court on Janu-

ary 31, 1996 as Defense Exhibit # 3, filed June 26, 1995 in United States District Court for the Western District of Washington.

eral discharge in accordance with the findings of the BOI and the BOR. On June 20, 1994, the Assistant Secretary of the Navy, Manpower and Reserve Affairs, approved the recommendation of CHNAVPERS and directed that the plaintiff be discharged. On July 29, 1994, plaintiff was discharged from the Navy.

On February 4, 1995, plaintiff sought review before the BCNR. On April 24, 1995, the BCNR denied plaintiff's application without a hearing because "the Board found that the evidence submitted was insufficient to establish the existence of probable material error or injustice." Admin. Rec. at 2.

## III

On July 25, 1994, four days before plaintiff was discharged, plaintiff filed a petition for a writ of habeas corpus and a complaint for declaratory and injunctive relief in the United States District Court for the Western District of Washington. Plaintiff, in part, sought a declaration that his discharge would be unlawful and an injunction to prevent his discharge from the Navy. Compl. (7/25/94) at 9–10.

Ultimately, the district court determined that it did not have jurisdiction to rule on plaintiff's complaint. Order (11/1/95) at 1–2. For that reason, on November 1, 1995, judgment was entered denying plaintiff's and government's motions for summary judgment, and the case was transferred to this court.

Plaintiff filed an amended complaint with this court adding new claims and incorporating by reference the factual allegations and legal arguments made before the district court. Amend. Compl. (2/28/96) at 3–4. In essence, plaintiff claims that the Navy's decision to discharge him was "arbitrary, capricious, and contrary to law" and that the Navy failed to follow its own rules and regulations regarding administrative separation for homosexual conduct. Id. at 4. For these rea-

sons, plaintiff requests reinstatement, correction of his records, award of back pay and full allowances, and promotion. Id. at 5–6. In the alternative, if the court finds that the plaintiff's separation was proper, plaintiff seeks separation pay. Id.

This case stands on defendant's motion filed April 29, 1996, to dismiss the case or, in the alternative, for summary judgment on the administrative record and on plaintiff's cross-motion, filed June 20, 1996, for summary judgment.

## IV

Defendant moves to dismiss the complaint under RCFC 12(b)(4) for plaintiff's failure to state a claim upon which relief can be granted. Def.'s Mot. (4/29/96) at 1, 3. Defendant argues that plaintiff has failed to allege facts which, if proved, would entitle him to relief. Id. at 3.

■ Pursuant to 28 U.S.C. § 1491(a)(2) and 37 U.S.C. § 204, a service member may file a complaint in the Court of Federal Claims for back pay on the basis that he has been unlawfully discharged. *Holley v. United States*, 124 F.3d 1462, 1465–67 (Fed.Cir. 1997); *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804, 810 (1979) (en banc). In *Sanders*, the Court of Claims held that "the basic entitlement to pay for commissioned officers in the armed services ... confers on an officer the right to the pay of the rank he was appointed to up until he is properly separated from the service." 594 F.2d at 810. In *Holley*, the Federal Circuit stated: "If the discharge was wrongful, the statutory right to pay continues; this right serves as the basis of Tucker Act jurisdiction." 124 F.3d at 1465.

Plaintiff primarily seeks back pay, reinstatement, correction of records and promotion.[3] Amend. Compl. (2/28/96) at 5–6. Plaintiff bases his claim on the allegation that he was unlawfully discharged. Id. at 4. Specifically, plaintiff alleges that the Navy failed

---

3. Among the items of relief plaintiff requested in his amended complaint filed Feb. 28, 1996, at 5, was promotion to a grade higher than the one in which he served at the time of discharge. Although this request for relief was not specifically addressed in defendant's motion to dismiss, this

relief must be denied for failure to state a claim upon which any court can grant relief. *See Adkins v. United States*, 68 F.3d 1317, 1323–24 (Fed.Cir.1995), *Voge v. United States*, 844 F.2d 776, 782 (Fed.Cir.1988), *Law v. United States*, 26 Cl.Ct. 382, 391–92 (1992).

to follow its own procedures and acted arbitrarily and capriciously in discharging him. *Id.* Because plaintiff's allegations, if proved, would entitle him to relief, defendant's motion to dismiss under RCFC 12(b)(4) will be denied.

## V

Defendant moves for summary judgment, arguing that plaintiff was lawfully discharged. Plaintiff cross-moves for summary judgment, arguing that he was either unlawfully discharged and entitled to reinstatement and back pay or, if lawfully discharged, was unlawfully denied separation pay. The material facts are not in dispute.

Plaintiff alleges that his disclosure of homosexual conduct was improperly considered in his separation proceedings in violation of UCMJ, Article 31, the Fifth Amendment, Military Rule of Evidence (MRE) 302(a), and Family Advocacy Program procedures. Pl.'s S.J. Mot. (6/20/96) at 18–24. Plaintiff further alleges that the Navy violated its own policies in discharging him in that (1) the BOI, the BOR and the Secretary erred in not applying the then new "Don't Ask, Don't Tell" policy to his case, *id.* at 25–28, and (2) the BOI, the BOR and the Secretary failed to consider the SECNAVINST 1920.6A retention factors, *id.* at 29–31. Plaintiff also argues that the BCNR erred when it reviewed plaintiff's discharge and found that it was lawful. Alternatively, plaintiff argues that the BCNR acted arbitrarily and capriciously when it considered the retention factors and found that he did not meet them. *Id.* at 29–30.

■ We review the discharge and related proceedings to ensure that the Navy followed its own procedures and regulations, that the separation was not contrary to law and that

the decision to discharge the service member was not arbitrary, capricious or unsupported by substantial evidence. *See, e.g., Adkins v. United States,* 68 F.3d 1317 (Fed.Cir.1995); *Palmer v. United States,* 38 Fed.Cl. 316 (1997); *Strickland v. United States,* 36 Fed. Cl. 651 (1996). *See also* 28 U.S.C. § 1491(a)(2).

## A

■ Plaintiff alleges that he was interrogated in the Family Advocacy Program without Article 31 warnings. Article 31, in part, provides:

> No person subject to [the UCMJ] may interrogate, or request any statement from, an accused or a person suspected of an offense without first ... advising him that he does not have to make any statement regarding the offense ... and that any statement made by him may be used as evidence against him in a trial by court-martial.

10 U.S.C. § 831(b). Because plaintiff was suspected of a crime under the UCMJ, abusing his adopted daughter, it is conceivable that he should have received the warnings contemplated by Article 31(b) before he was interviewed by a Family Advocacy Program counselor.[4] If plaintiff should have received such warnings and did not, certainly any evidence obtained in violation of Article 31 would be excluded from a court-martial. Article 31(d) applies the exclusionary rule: "No statement obtained from any person in violation of this article ... may be received in evidence against him in trial by court-martial." 10 U.S.C. § 831(d). However, because plaintiff was not the subject of a court-martial, but the subject of an administrative discharge, the Article 31(d) remedy does not apply.[5]

---

4. Plaintiff did receive Article 31(b) warnings by a Family Advocacy Program representative, Gilbert Banks, at Bremerton Naval Hospital "in late February or Early March," but not immediately prior to each Family Advocacy Program interview. Pl.'s S.J. Mot. (6/20/96) at 6; Pet.'s Memo. (6/2/95) at 13. NAVMEDCOMINST 6320.22, 6(i)(11)(a) and Enclosure 6 (Jan. 18, 1989) address the applicability of Article 31(b) warnings to the Family Advocacy Program.

5. Plaintiff cites *United States v. Ruiz,* 48 C.M.R. 797, 1974 WL 13920 (U.S.C.M.A.1974) for the proposition that the Article 31(d) remedy (exclusion of evidence) applies to administrative discharge proceedings. *Ruiz* involved a criminal prosecution of serviceman for refusing to obey an order to submit to a follow-up urinalysis (he had previously tested positive for drug use) which, if also positive, would have been used in an administrative discharge proceeding. The holding of the case was that a service member

## B

Plaintiff likewise argues that the Family Advocacy Program counselor failed to inform him of his Fifth Amendment right against self-incrimination—the constitutional analogue to Article 31. The Fifth Amendment states: "No person shall be ... compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Supreme Court has held that in order to protect this right, suspects interrogated by police must be informed that they do not have to provide evidence which could be incriminating. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). If a suspect is not informed of his rights, the exclusionary rule applies and evidence obtained from him is rendered inadmissible. *Id.*

However, it is not at all clear that the exclusionary rule applies to administrative discharge proceedings. The Ninth Circuit in *Garrett v. Lehman,* 751 F.2d 997, 1002–03 (1985), recognized that the exclusionary rule is typically applied only in criminal proceedings. *Garrett* relies heavily on a Supreme Court decision, *Immigration and Naturalization Serv. v. Lopez–Mendoza,* 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984), which held that the exclusionary rule is inapplicable to administrative deportation proceedings, in part, because they are not criminal. The *Garrett* court equated its decision with *Lopez* as follows:

> Although unlawful entry into the country is a crime, the [Supreme] Court concluded [in *Lopez* ] that the deportation hearing is not designed to punish for such entry. Rather, the hearing "looks prospectively to [the alien's] right to remain in this country in the future. Past conduct is relevant only insofar as it may shed light on the [alien's] right to remain." [*Lopez* at 1038, 104 S.Ct. 3479.] ... Administrative discharge proceedings are equally prospective. The function of such proceedings is to determine eligibility for military service; not to punish for past wrongs.

751 F.2d at 1002.

We agree with *Garrett* that an administrative discharge hearing is not a criminal proceeding. Naval regulations state that the purpose of administrative separation proceedings is to remove officers who are not fit for service:

> It is Department of Navy policy to promote the readiness of the naval service by maintaining authorized strength levels in each grade and competitive category and by maintaining the highest standards of conduct and performance in the officer corps. To meet these objectives it is necessary to provide for orderly and expeditious administrative separation of officer personnel.

SECNAVINST 1920.6A(7) (Nov. 12, 1983).

A finding that the proceedings in this case are not criminal does not foreclose the possibility of application of the exclusionary rule. The Supreme Court utilizes a cost-benefit analysis to determine whether the benefits of the exclusionary rule outweigh the costs in non-criminal cases. *Lopez,* 468 U.S. at 1041. *See also United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (setting forth the cost-benefit framework for the application of the exclusionary rule). The *Lopez* Court weighed the costs and the benefits and concluded that the exclusionary rule should not be applied to deportation hearings, in part because "[t]he prospect of even occasional invocation of the exclusionary rule might significantly change and complicate the character of the[ ] proceedings." 468 U.S. at 1048, 104 S.Ct. 3479. Similarly, the court in *Garrett* concluded that applying the exclusionary rule to administrative discharge proceedings would have a "disruptive effect" with costs "our society cannot afford to pay." 751 F.2d at 1004. We likewise conclude that an officer's right against self-incrimination does not outweigh the Navy's right to consid-

---

may lawfully refuse to obey an order when compliance therewith would require him to furnish evidence that might tend to incriminate him.

*Ruiz* can be distinguished in two ways. First, it specifically deals with a service member's right to disobey an order; it does not apply the exclu-

sionary rule. Secondly, *Ruiz* was prosecuted criminally in a court-martial proceeding; the case did not involve an administrative board proceeding. In any event, *Ruiz* is not binding authority in this court.

er evidence relevant to officer's fitness for service. At least one case from this court has come to the same conclusion. *Martinez v. United States*, 26 Cl.Ct. 1471, 1476 (1992), *aff'd*, 11 F.3d 1069 (Fed.Cir.1993).

For these reasons, we conclude that the exclusionary rule should not apply to administrative discharge proceedings.

### C

Plaintiff asserts that his disclosure of homosexual conduct was admitted in evidence in violation of Military Rules of Evidence 302(a). Rule 302 is not applicable to plaintiff's case because it deals with the insanity defense in a trial by court-martial. Additionally, both the Military Rules of Evidence and naval regulations provide that the Rules do not apply to administrative discharge proceedings. *See* Mil.R.Evid. 101, 1101. Specifically, naval regulations state that in administrative discharge hearings, the "rules of evidence do not apply ... [and] evidence not admissible in a court of law may be accepted." SECNAVINST 1920.6A, Enclosure (8), ¶ 2(j) (March 17, 1993). For these reasons, we conclude that plaintiff's argument has no merit.

### D

■ Plaintiff further asserts that there are no regulations that permit the use of Family Advocacy Program reports in administrative discharge proceedings. Plaintiff argues that for this reason the Navy violated Family Advocacy Program procedures when it used information obtained in a Family Advocacy Program interview in his administrative discharge proceedings.

The Family Advocacy Program is a program established by the Navy to "address the prevention, evaluation, identification, intervention, treatment, follow-up, and reporting of child and spouse maltreatment, sexual assault and rape." SECNAVINST 1752.3(1) (Jan. 27, 1984). The Navy provides that:

The objective of the Family Advocacy Program is to prevent family mistreatment through information and education, to deter illegal actions by the knowledge that administrative and disciplinary action may be taken against perpetrators, to provide treatment for victims of maltreatment, to identify, support and treat at-risk families, and to assist military personnel who have the potential for further useful military service.

SECNAVINST 1752.3(6) (Jan. 27, 1984).

It should be emphasized that the Family Advocacy Program is not designed solely for treatment of service members. Regulations plainly state that the purpose of the program is, in part, "to deter illegal actions by the knowledge that administrative and disciplinary action may be taken against perpetrators." *Id.* The regulations continue: "To achieve these objectives, it is [Navy] policy to ... [a]pply disciplinary or administrative sanctions for action or omissions constituting maltreatment when considered appropriate by the member's commanding officer." SECNAVINST 1752.3(6)(e) (Jan. 27, 1993). Commanding officers are instructed to respond to Family Advocacy Program cases by "[h]old[ing] perpetrators [of family mistreatment] accountable for their behavior" and by "[w]eigh[ing] disciplinary/administrative/treatment options." OPNAVINST 1752.2, Enclosure (2), ¶ 1(d)(1)(a) (March 6, 1987).

Additionally, the regulations clearly indicate that information obtained by Family Advocacy Program personnel may be used in administrative discharge proceedings. The regulations provide that a "member will be separated"—even if the "administrative discharge is predicated solely on information provided by" service members who have voluntarily sought treatment. SECNAVINST 1752.3(7)(a)(3) (Jan. 27, 1984). *See also* OPNAVINST 1752.2(4)(a) (March 6, 1987).

In light of these Family Advocacy Program regulations, we conclude that the information obtained in plaintiff's interviews was properly considered in his administrative discharge proceedings.

Notwithstanding such propriety, it is fair to note that no information concerning any homosexual conduct involving plaintiff was known to anyone in a position of naval authority until plaintiff disclosed the information as part of his participation requested by naval authorities in a program designed to

assist dysfunctional families and "to assist military personnel who have the potential for further useful military service," SECNAVINST 1752.3(6) (Jan. 27, 1984). Further, it is fair to note that plaintiff was found to be not guilty of the offenses charged by his step-daughter, the occasion for his requested participation in the FAP.

**E**

Plaintiff claims that "the Board for Correction of Naval Records [was] plainly in error where it refused to implement NAVADMIN 033/94 ... on the grounds that it was not in effect during Kindred's proceedings." Pet.'s Resp'g. Memo (7/14/95) at 9. See also Pet S.J. Memo. (6/2/95) at 18. NAVADMIN 033/94, commonly known as the "Don't Ask, Don't Tell Policy," is a policy which, in part, addresses the separation of homosexuals. The plaintiff argues that because his separation proceedings were ongoing at the time the policy became effective, the Secretary should have applied it to his case. However, the "Don't Ask, Don't Tell" policy, issued on December 21, 1993, "applies only to administrative separation proceedings initiated[6] on or after February 5, 1994, unless the Secretary of the Service concerned determines that it should be applied in a particular case in which proceedings were initiated before that date." DODDIR (12/21/93) at 3. Plaintiff's separation proceedings were initiated on August 6, 1993, well before February 5, 1994. Admin. Rec. at 163. Thus, the Navy was not required to apply the "Don't Ask, Don't Tell" policy to plaintiff's separation.[7]

**VI**

■ Plaintiff also asserts that his discharge was unlawful because the BOI, the BOR and the Secretary failed to consider the SECNAVINST 1920.6A retention factors. Pl.'s S.J. Mot. (6/20/96) at 29–31. SECNAVINST 1920.6A, entitled "Administrative Separation of Officers," regulates the procedure for administrative discharge of Navy

and Marine Corps officers. Enclosure (3) of SECNAVINST 1920.6A, entitled "Policy Governing Involuntary Separation," includes regulations controlling "Separation for Cause." Plaintiff was separated for cause under this part, paragraph 1(b), for homosexual conduct. The pertinent provisions follow:

*POLICY GOVERNING INVOLUNTARY SEPARATION*

1. *Separation for Cause.* Officers who do not maintain required standards of performance or professional or personal conduct ... may be processed for separation for cause in accordance with this instruction when there is reason to believe that one or more of the following circumstances exist....

....

b. *Misconduct or Moral, or Professional Dereliction.* Performance of personal or professional conduct ... which is unbecoming an officer as evidenced by one or more of the following reasons:

....

(3) Homosexuality. The basis for separation may include preservice, prior service, or current service conduct or statements. Processing for separation is mandatory. No officer shall be retained without the approval of the Secretary of the Navy when an approved finding of homosexuality is made. An officer shall be separated under this provision *if one or more of the following approved findings is made:*

(a) The member has engaged in, attempted to engage in, or solicited another to engage in a homosexual act or acts, *unless there are further approved findings that:*

1. such conduct is a departure from the member's usual and customary behavior; and

2. such conduct under all the circumstances is unlikely to recur; and

---

6. "Proceedings are considered to be initiated on the date ... a command delivers to an officer a notice of intent to start separation proceedings." SECNAVINST 1920.6A(3)(a) (Nov. 21, 1983).

7. The new separation policy would likely not assist plaintiff in overturning his discharge because plaintiff does not dispute that he committed homosexual acts. NAVADMIN 033/94, ¶ 8(A) states: "Homosexual conduct is still grounds for separation from the naval service."

3. such conduct was not accomplished by use of force, coercion or intimidation by the member during any period of military service; and

4. under the particular circumstances of the case, the member's continued presence in the naval service is consistent with the interest of the naval service in proper discipline, good order and morale; and

5. the member does not desire to engage in or intend to engage in homosexual acts.

(b) The member has stated that he or she is a homosexual or a bisexual or has married or attempted to marry a homosexual or bisexual....

SECNAVINST 1920.6A, Enclosure (3) (emphasis added). The separation regulations allow an officer who has committed homosexual acts to remain in the Navy if he meets all of the retention factors set forth in paragraph (1)(b)(3)(a).

Because it appears, as discussed below, that no authorized person or board made any analysis, evaluation or findings concerning the five factors set out in Enclosure (3), ¶ 1(b)(3)(a), prior to plaintiff's discharge, the pivotal issue in this case is whether the Navy was required to consider and make findings with respect to the five retention factors during plaintiff's involuntary administrative separation for homosexual conduct.

### A

The regulations do not explain precisely when, or even whether, the factors must be considered.[8] Possible interpretations concerning application of the factors include the following three. First, consideration of the factors could be wholly discretionary. Second, consideration of the factors could be required only when the service member invokes them.[9] Third, consideration of the factors could be required in all homosexual discharge cases once a finding of homosexual conduct has been made.

As set forth above (quoting SECNAVINST 1920.6A, Enclosure (3), ¶ 1(b)(3)), once a finding that an officer has committed a homosexual act has been made, the only way the officer can be retained is for an authorized person or board to make favorable findings on all five retention factors (except that even after an "approved" finding of homosexuality, the Secretary has discretion to withhold discharge).

Favorable findings on all five of the retention factors mean that the officer is fit to serve despite his "misconduct." The Navy cannot make a proper determination of whether an officer who has committed homosexual conduct is fit to serve—the purported purpose of the administrative discharge proceedings [10]—if the Navy fails to consider, at the appropriate juncture, the factors to determine his fitness for service. For this reason, consideration of and findings on the retention factors must occur in all cases in which a finding of homosexual conduct has been made.

Given the initial hearing and appeal structure established by regulations pertaining to administrative discharges (see Part I, above), we conclude that under the regulations in effect when plaintiff's discharge proceedings were initiated (August 6, 1993), the retention factors must, in the first instance, be considered and ruled upon by the BOI.

Enclosure (3) speaks in terms of "approved" findings with respect to the fundamental misconduct as well as the retention factors. Presumably, this means, in the context of plaintiff's case, that a BOR (whose function is to review the report of a BOI rather than to make initial findings) has "approved" the findings of a BOI. (The BCNR is

---

**8.** NAVADMIN 033/94, the current policy on discharge of officers for homosexual conduct, does explain when the retention factors must be considered: "Findings regarding whether or not retention is warranted under the limited circumstances of paragraph 8B [the retention factors] are required if the member clearly and specifically raises such limited circumstances." NAVADMIN 033/94 ¶ 8H. NAVADMIN 033/94 was not in effect when plaintiff's discharge was initiated.

**9.** This is the current policy of the Navy but was not in effect when plaintiff's discharge process was initiated on August 6, 1993. *See* NAVADMIN 033/94, ¶ 8(H) (effective in discharge proceedings initiated on or after February 5, 1994).

**10.** *See* SECNAVINST 1920.6A, ¶ 7.

not part of the discharge process.)  Further, the Secretary, in the exercise of discretion, makes a discharge decision on the basis of "approved" findings.  Thus, unless specific findings are made by a BOI, there are no findings for a BOR to review and approve (or disapprove) and no "approved findings" for the Secretary to consider.

If BOI consideration of the factors for retention were wholly discretionary, the issue raised in *Matlovich v. Secretary of Air Force,* 591 F.2d 852 (D.C.Cir.1978), and *Berg v. Claytor,* 591 F.2d 849 (D.C.Cir.1978), would be implicated.  *Berg* and *Matlovich* hold that when an exception to the requirement of separation for homosexual conduct exists, but military regulations do not explain when the exception applies, a board considering discharge of a service member must explain the basis of its decision not to apply the exception.  *Matlovich,* 591 F.2d at 861; *Berg,* 591 F.2d at 851.  Plaintiff cites this authority and alleges that the action taken by the Navy was improper because neither the BOI, the BOR nor the Secretary, issued a decision explaining why the retention factors did not apply to plaintiff.  Pet.'s S.J. Memo. (6/2/95) at 19–20.  *See also* Pl.'s Reply (8/7/96) at 2.  We agree.

Consistent with this case authority, plaintiff was entitled to be considered for retention merely because Navy regulations "expressly contemplate[ ] that retention in the service is an alternative in proper cases," *Matlovich,* 591 F.2d at 859, and some officers found to have engaged in such misconduct are so considered and are retained.  Under this regulatory scheme, it is *per se* arbitrary and capricious for BOIs, *sua sponte,* to evaluate the retention factors and make findings with respect to some officers but not do so in the case of other officers similarity situated, such as plaintiff.  We conclude, as did the *Matlovich* court, 591 F.2d at 859, that "the procedural regulations . . . demand some reasoned explanation why [retention] is rejected in the case at hand."

In summary, our conclusion, based both on the discharge scheme set out in Navy regula-

tions effective when plaintiff's discharge proceedings were initiated and on the case law discussed above, is that the failure of a BOI, having found misconduct, to evaluate and make specific findings on the five retention factors, results in a discharge decision which is arbitrary and capricious.

**B**

Because we have determined that the BOI had an obligation to evaluate and make findings concerning the five retention factors in plaintiff's case, we must next determine whether the factors were considered and made the subject of findings by the BOI.

The first stage of the show cause proceedings was the hearing before the BOI.  The BOI held a hearing and issued findings on October 13, 1993.  The BOI's findings are included in its brief report, read into the record at the hearing, which, in pertinent part, states:

1.  A Board of Inquiry was held at Naval Legal Service Office, Detachment, Bangor, on board Naval Submarine Base, Bangor, on 13 October 1993, in the case of Lieutenant Steven B. Kindred, SC, U.S. Navy, . . .

2.  *Findings of the Board:*  Based on the preponderance of the evidence for each allegation, the board found as follows: [11]

. . . .

b.  That by a vote of 3 to 0, Lieutenant Steven B. Kindred, SC, U.S. Navy did/~~did not~~ commit misconduct, as specified in references (b) and (c), specifically UCMJ, Article 133, (conduct unbecoming an officer—Homosexual~~ity~~ acts).

. . . .

3.  *Recommendations of the Board (if applicable):*  By a vote of 3 to 0, the Board recommends that Lieutenant Steven B. Kindred be/~~not be~~ separated from the naval service . . . in accordance with the findings of the board.

Admin. Rec. 20–21.  In the BOI report, a list of all findings was specifically included and findings regarding the factors for retention are clearly absent.  The only conclusion one

11.  The findings not listed involve the charge of sexual abuse.  No adverse findings were made with respect to that issue.  The finding on homosexuality was the only adverse finding of the Board.  *See* Admin. Rec. 20–21.

can draw from the report is that the BOI, after finding plaintiff had committed "misconduct," did not consider the retention factors. Plainly, it did not make specific findings concerning any of them.

After the BOI issued its report, plaintiff was given the opportunity to submit a rebuttal statement to be considered by the BOR at the next stage of the proceedings. *See* Admin. Rec. 72, 71. Plaintiff did submit such a statement, Admin. Rec. 65–69, addressed to CHNAVPERS, the convening authority for the show cause proceedings. SECNAVINST 1920.6A, 13 (March 17, 1993). In the statement dated November 29, 1993, plaintiff specifically raised the retention factors:

(a) "such conduct was a departure from the member's usual and customary behavior:"—Of my long 17 year career, these dozen or so experimental experiences over several months time was indeed a departure from my usual behavior. In all instances, I was in a period of family turmoil when they occurred . . . .

(b) "such conduct under all circumstances is unlikely to recur;"—I have consistently stated throughout this process that these acts were experimental in nature, yielding the absolute knowledge, well grounded in fact, that I am strictly heterosexual, this behavior is not at all enjoyable to me and *will not* recur.

(c) "such conduct was not accomplished by use of force, coercion, or intimidation by the member during a period of naval service;"—I, at no time in my career or life, have ever used force, coercion or intimidation on anyone for any purpose.

(d) "under the particular circumstances of the case, the member's continued presence in the naval service is consistent with the interest of proper discipline, good order, and morale;"—No one, outside those with a strict need to know, have any idea what my case is about, let alone that I even have a case. All coworkers believe that I was transferred here for some medical reason . . . . My retention would not upset the morale of the command at all. I greatly appreciate my Commanding Officer allowing me to continue working in my normal job [during the investigation]. It

has allowed the occurrence of curiosity questions to remain essentially zero.

(e) "and the member does not desire or intend to engage in homosexual acts."—As I have stated above (and everywhere else), the acts were experimental in nature and yielded a great distaste for them. I *never* intend to repeat such behavior again. This is a closed chapter in my life . . . .

Admin. Rec. at 65–66. Plaintiff also opined that the BOI was unaware that after finding that plaintiff had engaged in homosexual conduct, they could recommend retention: "They had the option to consider whether I would be a productive officer if retained, but seemed unaware of the option." Admin. Rec. at 68.

Plaintiff's rebuttal statement, although addressed to CHNAVPERS, the convening authority for the BOI and BOR, was given to his CO and to CNBS before it was forwarded to CHNAVPERS. In addition to forwarding the Board's report, the transcript of the hearing and plaintiff's rebuttal statement, as originally directed by CHNAVPERS, CNBS attached her own letter commenting on plaintiff's case. In the letter, CNBS refuted plaintiff's rebuttal statement and recommended discharge. Admin. Rec. at 22–23. There is no provision for a CNBS to evaluate a respondent's case and make recommendations regarding discharge. Notwithstanding the ultra vires nature of the CNBS's letter, it became a part of plaintiff's Administrative Record and was even cited by defendant as evidence that the factors for retention were considered. Def.'s Reply (7/23/96) at 7 n. 8; Def.'s Mot. to Dismiss (4/29/96) at 9. Because this letter is not part of the prescribed separation proceedings, we do not consider it evidence that the factors for retention were considered by the proper authorities in plaintiff's case.

The next stage of the proceedings began when the CHNAVPERS convened a BOR to review plaintiff's case. A BOR "review[s] the reports of the Board of Inquiry . . . and make[s] recommendations to the Secretary." SECNAVINST 1920.6A, Enclosure (8), ¶ 3(a) (March 17, 1993). The officer "does not have the right to appear before [the BOR] or present any statement to the [BOR], except

the statement of rebuttal to the findings and recommendation of the Board of Inquiry." SECNAVINST 1920.6A, Enclosure (8), ¶ 3(d) (March 17, 1993). On February 2, 1994, the BOR made the following finding:

2. The Board of Review determined . . .:

__ LTJG Kindred should be retained on active duty and the case should be closed

or

X LTJG Kindred has failed to establish that he should be retained on active duty. By *unanimous* / majority vote, the Board recommends that he be separated with an Honorable, *General,* or, Other Than Honorable discharge.

Def.'s Ex. (1/31/96) at Ex. 3.

There is no evidence that the BOR specifically considered the factors for retention, despite their relevance and their being pleaded in plaintiff's rebuttal statement. Plainly, the retention factors are not mentioned in the BOR report, and no specific findings are made with respect to any of them. In any event, in the administrative discharge scheme described in the regulations, the BOR is not the prescribed authority to make initial findings concerning the factors, but rather the board to review, and to approve or disapprove, findings of a BOI.

In the next stage of the discharge proceedings, CHNAVPERS issued a report to the Secretary with a recommendation of discharge. Admin. Rec. at 30. CHNAVPERS's report does not mention whether or not plaintiff was ever considered for retention. *Id.* The Assistant Secretary of the Navy, Manpower and Reserve Affairs, signed the CHNAVPERS report on June 20, 1994, thereby concurring with the recommendation and effecting a final decision on the case. *Id.* On June 24, 1994, the Deputy Chief of Naval Personnel signed the report. *Id.* On July 29, 1994, plaintiff was discharged from the Navy. Admin. Rec. at 38.

Based on this review of plaintiff's discharge proceedings, revealing the absence of BOI consideration of the retention factors after it made a finding of "misconduct," and a review of the case law addressing similar situations, we conclude that the Navy was arbitrary and capricious when it discharged plaintiff without considering and making findings with respect to the five retention factors.[12]

### C

The BCNR had the opportunity to correct the error in plaintiff's discharge. It bears emphasis, however, that a BCNR proceeding is outside the scheme of an administrative discharge proceeding. *See generally,* 10 U.S.C. § 1552(a)(1) (providing that boards for correction of military records are civilian boards acting on behalf of the service Secretary "to correct an error or remove an injustice").

On February 4, 1995, plaintiff filed an application for correction of his military record. Admin. Rec. at 344. The BCNR did not determine whether the retention factors were ever considered in plaintiff's administrative discharge, nor did the BCNR decide whether the Navy should have considered them. The BCNR simply determined, without a hearing, that plaintiff could not meet the retention factors:

The [BCNR] noted that two of these [retention] factors are that the individual's homosexual activity was a departure from his or her usual and customary behavior, and that such behavior is unlikely to recur. Since you admitted to committing about 25 homosexual acts during a five year period, the most recent of which was a month before the psychosexual evaluation, it is clear to the [BCNR] that homosexual activity was not a departure from your usual

**12.** This conclusion of prejudicial procedural error constituting arbitrariness and capriciousness may have limited future application, since under new "Don't Ask, Don't Tell" regulations applicable to proceedings initiated after February 5, 1994, service members are on notice that they must specifically assert the retention factors: "Findings regarding . . . [the five retention fac-

tors] are required if the member clearly and specifically raises such limited circumstances." NAVADMIN 033/94, ¶ 8(H). The new regulations also clearly advise that the service member bears the burden of proving by a preponderance of the evidence that "retention is warranted under the . . . [retention factors]." NAVADMIN 033/94, ¶ 8(C).

behavior, and could very well have recurred.

Admin. Rec. at 6.

It is worth noting that the BCNR erroneously concluded that plaintiff engaged in homosexual acts during a five-year period. The actual duration was actually a few months ending in early 1989. Admin. Rec. at 103–104. Additionally, the BCNR's characterization of the most recent (March 1993, Admin. Rec. at 209) homosexual "act" is misleading. The details of the "act" were never known during the discharge proceedings, Admin Rec. 94–95, 103–04, 209. In an affidavit to this court, plaintiff explained this last episode as follows:

> I was at a store buying compact disks. I had to go to the men's room. When I was in there, a stranger ... came in and sat down in the adjoining stall. He initiated some contact with his hand on my leg between my ankle and knee, and I pulled my leg away. I promptly left the restroom.... The total elapsed time was a few seconds and was never sexual on my part.

Kindred Aff. (6/20/96) at 4–5.

To infer from this incident that plaintiff is likely to engage in homosexual acts in the future would be questionable. A more plausible inference is that plaintiff, if confronted with the opportunity to engage in homosexual behavior, would decline. This inference is supported by other evidence tending to suggest that plaintiff is a heterosexual, such as the fact that he is married, has three of his own children and has testified that homosexual behavior now revolts him. However, it is a BOI which should consider this evidence and any inference to be drawn therefrom, subject to review (and approval or disapproval) by a BOR.

While we consider the BCNR's evaluation of the retention factors improper, we conclude that the reversible error is the BCNR's failure to grant plaintiff relief for the Navy's failure to consider the retention factors before his discharge. Defendant argues that the BCNR was entitled to consider the factors in reviewing plaintiff's discharge. Def.'s Mot. to Dismiss (4/29/96) at 10–11. This argument fails to address the error. The BCNR was charged with reviewing plaintiff's discharge for errors, 32 C.F.R. § 723.2(b) (1993), yet it did not acknowledge that the Navy failed to consider the retention factors prior to discharge and cause the matter to be remanded to a BOI to make the findings concerning retention factors. However, even if the BCNR had cited the error, it still would have erred by considering the retention factors instead of finding that the discharge was unlawful.

Plaintiff made a similar argument in its cross-motion for summary judgment. Pl.'s S.J. Mot. (6/20/96) at 15–17. Defendant responded, citing *Sawyer v. United States,* 930 F.2d 1577 (Fed.Cir.1991), that "the regulations applicable to the BCNR 'contemplate that it will find facts and not act only as an appellate forum.' *Id.* at 1581." Def.'s Mot. to Dismiss (4/29/96) at 10–11.

As an initial matter, *Sawyer* cannot be applied to this case because the Federal Circuit specifically distinguished *Sawyer,* a *disability* case in which a correction board "is competent to make a disability determination in the first instance," from a *discharge* case in which a "correction board did not have authority to sit as a selection board." *Id.* at 1581. Additionally, that the BCNR can find facts does not mean that the BCNR can correct a procedural error by finding facts that were supposed to be found *during the discharge proceeding.* Plaintiff is not asking the BCNR to reconsider the factors because the Navy considered them and came to the wrong conclusion. Plaintiff is saying that the Navy never considered factors which determine whether he should be retained.

This case is similar to *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804 (1979) (en banc). In *Sanders,* the Court of Claims held that a correction board erred in failing to correct a service member's record when an administrative error had occurred. *Id.* at 817. A correction board had refused to correct the error because it concluded that the service member would not have been promoted had his record been complete. *Id.* The court concluded that the correction board was "usurping the functions of the selection board, making itself a sort of super selection

board, instead of correcting the error and injustice as its charter contemplates." *Id.* Similarly, in the instant case, the BCNR failed to recognize that a prejudicial, procedural error had occurred. By attempting to make the findings that the BOI should have made, the BCNR usurped the role of the discharge board. The Navy did not intend for the BCNR to decide, in the first instance, whether officers are fit for service; rather the BCNR's mandate is to review cases and correct errors. 32 C.F.R. § 723.2(b) (1993).

Plaintiff was entitled to be properly considered for retention. In *Doyle v. United States,* 220 Ct.Cl. 285, 599 F.2d 984 (1979), the Army selection boards which reviewed service members' records for promotion were improperly constituted because reserve members were not included. The Court of Claims held that "[s]tandby or relook boards that do not undertake the exhaustive reevaluation that a normal, regular selection board does do not provide the full and complete opportunity to be fairly and equitably considered for promotion mandated by law." *Id.* at 1001. Likewise, we believe that the BCNR's consideration of the retention factors does not provide the "full and complete" opportunity for plaintiff to be considered for retention.

### D

Plaintiff served 17 years in the Navy without incident and underwent a lengthy administrative discharge proceeding without any discharge authority ever making explicit findings concerning whether, despite his candid admission of misconduct, he was fit for service. The failure of the Navy to consider the factors for retention before plaintiff was discharged makes plaintiff's discharge unlawful.

### VII

Based on the foregoing, defendant's motion to dismiss or, alternatively, for summary judgment is DENIED, and plaintiff's cross-motion for summary judgment is GRANTED.[13] Accordingly, plaintiff is entitled to judgment vacating his discharge from the Navy, directing reinstatement to active service retroactive to date of discharge (July 29, 1994) at the rank held immediately prior to discharge, granting back pay and allowances from date of discharge to date of actual reinstatement, and directing correction of his naval records to delete any reference to his 1994 discharge from the Navy.

This disposition, including reinstatement, does not preclude a reconvened BOI from addressing (1) the charge of misconduct which constituted the basis for plaintiff's discharge and (2) the five retention factors. We vacate the discharge for prejudicial procedural error which, of course, is subject to correction upon rehearing.

The parties are requested to attempt stipulation concerning the precise amount of damages (back pay and allowances) to be awarded to plaintiff. A useful approach would be agreement on an accumulated lump sum as of a date certain (e.g., June 30, 1998) and further agreement on a daily rate applicable from such date certain to the date of reinstatement.

The parties shall file a joint status report by Monday, July 13, 1998 advising of any agreement concerning damages and further advising of any other suggestions concerning the content or form of the judgment.

---

**13.** Among the items of relief plaintiff requested in his amended complaint filed Feb. 28, 1996, at 5, was promotion to a grade higher than the one in which he served at the time of discharge. As explained in note 3, above, this relief must be denied for failure to state a claim upon which any court can grant relief. This relief was not requested in plaintiff's application to the BCNR, Admin. Rec. at 9.